*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 29, 2016          522892
_____

In the Matter of the Claim of
    GREGORY A. MITCHELL,
                    Respondent.

THE NATION CO. LTD PARTNERS,              MEMORANDUM AND ORDER
                    Appellant.

COMMISSIONER OF LABOR,
                    Respondent.
_____

Calendar Date:  November 18, 2016

Before:  Peters, P.J., McCarthy, Egan Jr., Lynch and Devine, JJ.

_____

        Law Offices of Daniel Silverman, LLP, New York City (Daniel A. Silverman of counsel), for appellant.

        Murphy, Burns, Barber & Murphy, LLP, Albany (Catherine A. Barber of counsel), for Gregory A. Mitchell, respondent.

        Eric T. Schneiderman, Attorney General, New York City (Steven Koton of counsel), for Commissioner of Labor, respondent.

        Greenberg Traurig, LLP, Albany (Michael Grygiel of counsel), for MPA-The Association of Magazine Media, amicus curiae.

_____

Egan Jr., J.

        Appeals from two decisions of the Unemployment Insurance Appeal Board, filed October 8, 2015, which, among other things, ruled that The Nation Co. Ltd Partners was liable for unemployment insurance contributions on remuneration paid to

claimant and others similarly situated.

The Nation, which was established in 1865 by abolitionists, is a publication consisting of a print magazine (with approximately 140,000 subscribers) and a website that is viewed by approximately two million readers each month. In February 2010, claimant – an established media critic and former publisher who was well known in his field – entered into a contract with The Nation Co. Ltd Partners (hereinafter the company) to write and manage a new blog focused on the media. The contract identified claimant as a freelance writer, and it was anticipated that claimant would write a daily or near-daily blog for The Nation's website. In accordance with the terms of the contract, claimant would be paid a "freelance payment" of $46,800, which ultimately was paid in monthly installments, for his work on his blog, and claimant would be separately compensated for any work he authored for the company's print magazine. Claimant's contract was subject to renewal on an annual basis, and claimant continued blogging for The Nation until June 2014. During the time that claimant was writing and managing his blog for The Nation, claimant also published approximately eight books of varying lengths and blogged for other entities, including The Huffington Post.

After claimant's contract was not renewed in 2014, claimant applied for unemployment insurance benefits and, in September 2014, the Department of Labor issued an initial determination finding that claimant was an employee and that the company was liable for additional contributions on claimant's earnings and all other similarly situated employees. The company objected and requested a hearing. After hearing testimony from claimant and various of the company's representatives, the Administrative Law Judge (hereinafter ALJ) upheld the initial determination, prompting the company to appeal to the Unemployment Insurance Appeal Board. The Board upheld the ALJ's findings, and these appeals ensued.

The case law governing the existence of an employment relationship often is more easily stated than applied. "Whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor

is determinative and the determination of the appeal board, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Concourse Ophthalmology Assoc. [Roberts], 60 NY2d 734, 736 [1983] [citations omitted]; accord Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010]; see Matter of Kliman [Genesee Region Home Care Assn., Inc.—Commissioner of Labor], 141 AD3d 1049, 1049 [2016]). "While many factors are to be considered, the primary factor is the degree of control exercised by [the purported] employer" (Matter of Lane [Hartnett], 160 AD2d 1060, 1061 [1990] [citations omitted], lv denied 76 NY2d 714 [1990]; see Matter of DeVaul [Guardi—Commissioner of Labor], 138 AD3d 1371, 1371 [2016]) — specifically, evidence of the purported employer's control over the means used to achieve the results produced (see Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d at 437; Matter of Greystoke Indus. LLC [Commissioner of Labor], 142 AD3d 746, 746-747 [2016]; Matter of Eckert [Fox Mobile Distrib. LLC—Commissioner of Labor], 133 AD3d 1075, 1076 [2015]). As a result, "[i]ncidental control over the results produced — without further evidence of control over the means employed to achieve the results — will not constitute substantial evidence of an employer-employee relationship" (Matter of Hertz Corp. [Commissioner of Labor], 2 NY3d 733, 735 [2004]; see Matter of McAlevey [Agewell Physical Therapy & Wellness, P.C.—Commissioner of Labor], 126 AD3d 1219, 1220 [2015]). Finally, "where the details of the work performed are difficult to control because of considerations such as professional and ethical responsibilities," courts have "applied the overall control test where substantial evidence of control over important aspects of the services performed other than results or means is sufficient to establish an employer-employee relationship" (Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d at 437-438 [internal quotation marks and citation omitted]; see Matter of Columbia Artists Mgt. LLC [Commissioner of Labor], 109 AD3d 1055, 1057-1058 [2013]).

As is it not the role of this Court to second-guess determinations rendered by administrative agencies or, more to

the point, independently review and weigh the evidence adduced at an administrative hearing (see e.g. Matter of Edscott Realty Corp. v Town of Lake George Planning Bd., 134 AD3d 1288, 1290 [2015]), application of the substantial evidence standard often has compelled this Court to affirm decisions rendered by the Board or its administrative counterparts — even where the record contains evidence that would support a contrary conclusion (see e.g. Matter of Aussicker [Park Ride Fly USA—Commissioner of Labor], 128 AD3d 1264, 1265-1266 [2015], lv dismissed 26 NY3d 944 [2015]; Matter of Wilner [Primary Stages Co. Inc.—Commissioner of Labor], 128 AD3d 1148, 1149-1150 [2015], lv dismissed 26 NY3d 955 [2015]).  The Court of Appeals, however, recently considered the meaning of the term "substantial evidence" in the context of an unemployment insurance appeal, holding that "'[s]ubstantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion of ultimate fact may be extracted reasonably — probatively and logically'" (Matter of Yoga Vida, NYC, Inc. [Commissioner of Labor], 28 NY3d 1013, 1015 [2016], quoting 300 Gramatan Ave Assoc. v State Div. of Human Rights, 45 NY2d 176, 181 [1978]).  While the Court of Appeals' recitation of the law may have simply restated a well-settled legal principle, its application of the substantial evidence standard to the record before it suggests that the Court, in reversing the Board and finding that the yoga instructors at issue constituted independent contractors, engaged in a more detailed, qualitative and arguably less deferential analysis of the various employment factors.[1]  Following the Court of Appeals' lead in this regard,

_____

[1]  To be sure, the Court of Appeals did not expressly signal that it was shifting its focus or otherwise refining the substantial evidence standard of review, but that conclusion may be inferred upon considering the points raised by the dissent, which recited in detail the various factors that supported the Board's finding of an employment relationship — factors that the majority discounted in finding that the subject claimants were independent contractors (Matter of Yoga Vida, NYC, Inc. [Commissioner of Labor], 28 NY3d at 1016-1017 [Fahey, J., dissenting]).  Further, although the Court of Appeals applied the

we find that, regardless of the analysis employed, the Board's decision here is not supported by substantial evidence in the record as a whole.

At the outset, we are satisfied that claimant – an experienced, well-known and established writer, author and media critic – qualifies as a professional for purposes of our analysis.[2]  Hence, our focus will be whether the company exercised "control over important aspects of the services performed" by claimant (Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d at 437).  In concluding that claimant was an employee, the Board cited the following factors: the requirement that claimant identify himself as a writer for The Nation, that he was assigned an intern for assistance, reimbursed for certain expenses, restricted from publishing the same content with competitors, required to use The Nation's software system to post his blog entries and that, on one occasion, was directed to continue to write on a particular topic after he expressed a desire to go in another direction.

While it is true that claimant was required to identify himself as a writer for The Nation, was paid an annual salary in monthly installments and was reimbursed for certain business-related expenses, it is equally true that claimant received a

means and results test to the yoga instructors at issue (apparently concluding that they were not professionals and, hence, were not subject to the overall control test), the critical examination of the relevant factors considered by the Court would apply with equal force in ascertaining whether a purported employer exercised "control over important aspects of the services performed" (Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d at 437).  In other words, regardless of the test employed, the level of inquiry is the same.

[2]  Our conclusion in this regard is case specific and should not be interpreted as standing for the proposition that anyone who writes a blog will qualify as a professional for purposes of the unemployment insurance law.

1099 form each year, filed his taxes as self-employed, was not required to obtain permission prior to taking a vacation and neither received fringe benefits nor was covered by the union contract pertaining to The Nation's staff writers (compare Matter of Berger [Gail & Rice, Inc.—Commissioner of Labor], 143 AD3d 1024, 1025-1026 [2016], with Matter of Guidotti [Swissport USA, Inc.—Commissioner of Labor], 119 AD3d 1265, 1266 [2014]). Similarly, although claimant was assigned an intern, one of The Nation's senior editors testified that the role of the intern was not content-based editing but, rather, centered around issues of "quality control," i.e., making sure that any links embedded in claimant's posts worked properly and that any "images [were] sized correctly." With respect to The Nation's software system, which was the mechanism via which claimant's blog entries were posted to The Nation's website, the senior editor testified that "there was a guide to inputting content into . . . [The Nation's] content management system," which was something that "all writers need[ed] to do," and that this system contained "rough guidelines about our house style," i.e., "when something is italicized, when it's not." As for claimant's ability to post — on another website — materials that he had authored for The Nation, claimant's contract provided that, while The Nation retained exclusive rights to the actual contents of claimant's posts, claimant could cross-post materials authored for The Nation after 48 hours — with attribution to The Nation and a corresponding "link[-]back" to the original post. Beyond that qualified restriction, the hearing testimony makes clear that, during his time with The Nation, claimant not only was permitted to write for other entities but was actively encouraged to do so (see Matter of Berger [Gail & Rice, Inc.—Commissioner of Labor], 143 AD3d at 1025). Indeed, as noted previously, during the relevant time period, claimant blogged for The Huffington Post and authored roughly eight books of varying lengths.

Turning to the actual degree of supervision or control exercised over claimant's work, the record reveals that claimant was not formally interviewed for his position (compare Matter of Cole [Niagara Falls Hous. Auth.—Commissioner of Labor], 142 AD3d 1264, 1266 [2016]), worked from home utilizing his personal laptop, set his own hours and did not suffer any adverse consequences if he did not post a story (compare Matter of Morris

[Source Interlink Media, LLC—Commissioner of Labor], 131 AD3d 1287, 1288 [2015], lv dismissed 26 NY3d 1137 [2016], with Matter of Crahan [Progress Rail Servs. Corp.—Commissioner of Labor], 116 AD3d 1277, 1278 [2014]).  Additionally, claimant did not have a supervisor (see Matter of Berger [Gail & Rice, Inc.—Commissioner of Labor], 143 AD3d at 1025) and was not permitted to work from The Nation's offices.  Significantly, the record makes clear that claimant generally was not assigned to write on a particular topic and could post a story to his blog prior to it being edited by The Nation's staff (compare Matter of Redwoodturral [Everest Prod. Corp.—Commissioner of Labor], 133 AD3d 1064, 1065 [2015]).

On this latter point, claimant testified that the content of his blog was "determined in a general sense" by conversations with The Nation's editors and that he "sometimes" was not allowed "to go in a certain direction."  For example, if the "traffic" on his blog indicated that a particular topic was popular, he would be encouraged "to stick with it" until the topic had run its course.  Although claimant testified that he had a vested interest in keeping The Nation's editors happy, i.e., the renewal of his annual contract, he acknowledged that he "had the right" to reject particular suggestions, and the record reflects that claimant could write about whatever topic interested him — within the broad subject areas of media and politics.  Notably, when presented with a suggested topic by The Nation's editor in chief, claimant testified that he "would kind of judge how important" that particular issue was to the editor; if he thought that the topic was "really important," he would respond to the suggestion but, if he sensed that the suggestion was "a little more off the cuff," he would ignore it.

The lack of supervision and control over claimant's work is further reflected by the testimony offered by The Nation's editors.  One of The Nation's senior editors testified that, while editors "would often make suggestions" and could "ask for corrections" or remove a post if it "didn't meet the standards of the publication," claimant "was really free day-to-day to determine what he would write about and when."  Although claimant was given "a broad direction to write about the media . . . and politics," "the contents of the post and the topic were really . . . entirely his choice."  Unlike staff writers, claimant

could not be compelled to write on a particular topic and, while The Nation preferred that claimant post his articles early in the workday and that such articles be submitted for editorial review prior to posting on the website, the senior editor made clear that claimant had no established work hours, could post whenever and from wherever he wished and that there were "no repercussions" and "no consequences" if claimant posted an article later in the day without editorial review or, alternatively, did not post at all on a given day.

This testimony was echoed by The Nation's editor in chief, who testified that she "trust[ed claimant] to manage [his] blog in ways that would be of value to traffic and readers," and that "[i]t was [claimant's] decision what to select, when to write, [and] how much to write each day." With respect to the discretion vested in the bloggers writing for The Nation, the editor in chief succinctly testified, "[W]e give them the keys to the car in a sense and they do their thing." Finally, the testimony offered by The Nation's editors reveals that all writers for The Nation — employees and independent contractors alike — were required to utilize The Nation's content management system, and the editorial review to which claimant's (and other writers') work was subject amounted to nothing more than the standard, industry-wide "quality control" review for grammar, syntax, working links within articles and the like. Simply put, there were "basic rules" that all writers "should follow" and, on this point, the case law makes clear that "[t]he requirement that the work be done properly is a condition just as readily required of an independent contractor as of an employee and [is] not conclusive as to either" (Matter of Yoga Vida NYC, Inc. [Commissioner of Labor], 28 NY3d at 1016 [internal quotation marks and citations omitted]; see Matter of Crahan [Progress Rail Servs. Corp.—Commissioner of Labor], 116 AD3d at 1278). Upon due consideration of the record as a whole, and for all of the reasons previously discussed, we find that the Board's decisions are not supported by substantial evidence and, as such, must be reversed.[3]

_____

[3] Our conclusion in this regard would be no different if we utilized the test applicable to nonprofessionals. Further, in

Peters, P.J., McCarthy, Lynch and Devine, JJ., concur.


ORDERED that the decisions are reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.



ENTER:

Robert D. Mayberger
Clerk of the Court

---

reaching this result, we have not considered the Department of Labor's Guidelines for Determining Worker Status: Magazine Publishing Industry, as the ALJ rejected claimant's attempt to enter that document into evidence at the administrative hearing, and it is not clear from the record whether either the ALJ or the Board took such guidelines into consideration in rendering their respective decisions.