In the Matter of CUSHMAN & WAKEFIELD, INC., Appellant. COMMISSIONER OF LABOR, Respondent. [61 NYS3d 732]—

Egan Jr., J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed February 8, 2016, which assessed Cushman & Wakefield, Inc., for additional unemployment insurance contributions.

Cushman & Wakefield, Inc. operates as a global real estate services firm that specializes in commercial properties, for which it provides sales, rental and management services. To perform these services, Cushman & Wakefield retains, among others, licensed real estate brokers who perform services required by commercial landlords, tenants, buyers and sellers. Following an audit triggered by the filing of a claim for unemployment insurance benefits by one of its brokers, the Department of Labor issued an initial determination finding Cushman & Wakefield liable for additional unemployment insurance contributions based upon remuneration paid to real estate brokers and others similarly situated from January 1, 2007 to March 31, 2010. Cushman & Wakefield objected, and, following a hearing, an Administrative Law Judge overruled the Department's assessment of unemployment insurance contributions. Upon administrative review, the Unemployment Insurance Appeal Board reversed the Administrative Law Judge's decision and upheld the Department's initial determination assessing unemployment insurance contributions. This appeal ensued.

We affirm. With regard to the Board's finding that an employment relationship existed between Cushman & Wakefield and its licensed real estate brokers, "[w]hether an employee-employer relationship exists is a factual question to be resolved by the Board and we will not disturb its determination when it is supported by substantial evidence in the record" (*Matter of Jennings [American Delivery Solution, Inc.—Commissioner of Labor]*, 125 AD3d 1152, 1152 [2015] [internal quotation marks and citations omitted]; *accord Matter of Williams [Summit*

*Health, Inc.—Commissioner of Labor]*, 146 AD3d 1210, 1210 [2017]). In the context of an unemployment insurance appeal, "[s]ubstantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably—probatively and logically" (*Matter of Yoga Vida NYC, Inc. [Commissioner of Labor]*, 28 NY3d 1013, 1015 [2016] [internal quotation marks and citation omitted]; *see Matter of Mitchell [Nation Co. Ltd Partners—Commissioner of Labor]*, 145 AD3d 1404, 1406 [2016]). "Although no single factor is determinative, the relevant inquiry is whether the purported employer exercised control over the results produced or the means used to produce those results, with control over the latter being the more important factor" (*Matter of Dwyer [Nassau Regional Off-Track Corp.—Commissioner of Labor]*, 138 AD3d 1369, 1370 [2016]; *accord Matter of Burgess [Attack! Mktg., LLC—Commissioner of Labor]*, 145 AD3d 1282, 1283 [2016]).

Cushman & Wakefield recruits experienced real estate brokers to provide real estate services to its clients, and, prior to retaining those brokers, it conducts a criminal background check. Cushman & Wakefield requires the brokers that it retains to then execute a written broker-salesperson agreement, which governs their relationship.* Pursuant to the agreement, Cushman & Wakefield provided its brokers with an office, various equipment—including a desk, telephone, stationary and business cards bearing the company's name—and secretarial and other support services deemed by Cushman & Wakefield to facilitate the brokers' transactional work. The agreement also specified that Cushman & Wakefield would furnish the brokers with advice, information and assistance that it deemed necessary for the brokers' assigned real estate activities and required the brokers to follow its written policies and procedures. Cushman & Wakefield also provided its brokers with fringe medical and dental benefits and reported these benefits as taxable income for the brokers and retained the right, at any time and in its sole discretion, to modify these benefits.

---

* We note that, at the hearing before the Administrative Law Judge, Cushman & Wakefield expressly declined to take the position that, based upon the written broker-salesperson agreement, its licensed real estate brokers were excluded from unemployment insurance coverage—and, therefore, that no employment relationship existed—by operation of law (*see* Labor Law § 511 [19]; *Matter of Feldstein [Feathered Nest—Commissioner of Labor]*, 253 AD2d 992, 993 n [1998]; *cf. Matter of Atac [Fashion Realty Group—Commissioner of Labor]*, 265 AD2d 777, 777 [1999]).

The agreement required brokers to faithfully devote their full business time and best efforts to aid and assist Cushman & Wakefield with the transaction of its business and, through the performance of their services, to promote the business and reputation of Cushman & Wakefield. To this end, Cushman & Wakefield reserved the right to direct the methods, techniques and procedures employed by the brokers. Significantly, the agreement prohibited the brokers from collecting or receiving any independent compensation for real estate services not performed in their capacity as a Cushman & Wakefield broker. Nor were the brokers permitted, without prior written consent from Cushman & Wakefield, to serve as a broker for any real estate transaction not related to Cushman & Wakefield's business. With regard to the brokers' compensation, which included the right to draw on commissions, the brokers were paid a commission according to a schedule of compensation established by Cushman & Wakefield and subject to modification in its sole discretion. Cushman & Wakefield agreed to provide the broker with a "guaranteed draw" of $35,000 per annum, payable semimonthly in equal installments, in the event that the brokers' commissions were less than that guaranteed draw amount.

In addition, Cushman & Wakefield had the sole discretion to determine the commission or fee charged to a client when a real estate transaction was completed, and the brokers were required to use only real estate forms approved by Cushman & Wakefield. Cushman & Wakefield reimbursed brokers for certain travel costs and professional expenses, including their real estate brokers' license application and renewal fees as well as half of any membership dues in a local real estate board for brokers. The agreement also contained a noncompete clause prohibiting the brokers from soliciting Cushman & Wakefield's clients for one year after their employment with Cushman & Wakefield came to an end. In view of the foregoing, and although there is evidence in the record that would support a contrary conclusion, we find that the Board's decision that Cushman & Wakefield exercised sufficient control over its licensed real estate brokers and those similarly situated so as to establish an employment relationship is supported by substantial evidence, and it will not be disturbed (*see Matter of Link [Cantor & Pecorella, Inc.—Commissioner of Labor]*, 153 AD3d 1061, 1063 [2017]; *Matter of Atac [Fashion Realty Group—Commissioner of Labor]*, 265 AD2d 777, 777 [1999]; *Matter of Feldstein [Feathered Nest—Commissioner of Labor]*, 253 AD2d 992, 993 [1998]; *compare Matter of 12 Cornelia St. [Ross]*, 56 NY2d 895, 897-898 [1982]; *Matter of Spielberger [Commissioner of Labor]*, 122 AD3d 998, 999-1000 [2014]).

McCarthy, J.P., Lynch, Devine and Pritzker, JJ., concur. Ordered that the decision is affirmed, without costs.