■ In the Matter of the Claim of JESSE SLATER, Respondent. KAUFMAN LEASING COMPANY LLC, Appellant; COMMISSIONER OF LABOR, Respondent. [68 NYS3d 205]—

Rumsey, J. Appeals from two decisions of the Unemployment Insurance Appeal Board, filed May 12, 2016, which ruled, among other things, that Kaufman Leasing Company LLC was liable for unemployment insurance contributions on remuneration paid to claimant and others similarly situated.

Claimant worked as an office leasing broker for Kaufman Leasing Company LLC, which is engaged in the business of commercial real estate brokerage. After claimant was terminated from his position, he was deemed eligible for unemployment insurance benefits on the basis that an employer-employee relationship existed, and Kaufman was assessed for additional unemployment insurance contributions on remuneration paid to claimant and those similarly situated. Kaufman objected to the finding of an employment relationship and, following a hearing, an Administrative Law Judge affirmed the initial determination. The Unemployment Insurance Appeal Board affirmed that decision and this appeal ensued.

We affirm. "A determination that an employer-employee relationship exists must rest upon evidence that [the purported employer] exercises control over the results produced by its salespersons or the means used to achieve the results" (*Matter of 12 Cornelia St. [Ross]*, 56 NY2d 895, 897 [1982] [internal quotation marks and citation omitted]). "Whether an employment relationship exists within the meaning of the unemploy-

ment insurance law is a question of fact, no one factor is determinative and the determination of the [Board], if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (*Matter of Concourse Ophthalmology Assoc. [Roberts]*, 60 NY2d 734, 736 [1983] [citations omitted]; *see Matter of Link [Cantor & Pecorella, Inc.—Commissioner of Labor]*, 153 AD3d 1061, 1062 [2017]).

Here, the record establishes that claimant, a licensed real estate salesperson, submitted his resume and was interviewed twice before being hired as an office leasing broker and signing an independent contractor agreement. Kaufman provided claimant and those similarly situated an extensive training program that included assignment of a mentor and instruction by a third-party vendor hired by the Kaufman that took place either at Kaufman's offices or the vendor's location. The training included instruction on best practices, basic leasing terminology, how to identify prospects, how to make cold calls and how to negotiate a transaction. Even after claimant successfully completed the training program within the probationary period, the services of the vendor were still available to him. Claimant was paid a draw during the probationary and training period, for which Kaufman did not seek reimbursement. Kaufman also provided claimant and those similarly situated an office with equipment and supplies—including desks, computers, Internet and multiple listing service—where claimant and those similarly situated were expected to report when the office opened at 8:30 a.m. or otherwise inform a supervisor of his or her whereabouts during the day.

In addition, Kaufman issued claimant and those similarly situated a work email address, as well as business cards with the salesperson's name and Kaufman's name on them. Pursuant to the signed agreement, Kaufman reimbursed claimant and those similarly situated for certain professional expenses, set the commission rates, reserved the right to request monthly reports, required confidential final transaction reports, provided health insurance at Kaufman's expense, prohibited the performance of similar services outside the company and required that the services be performed to the best of the salesperson's abilities in a timely and productive manner. Under these circumstances, substantial evidence supports the Board's finding that the level of supervision and control exerted by Kaufman amounted to an employer-employee relationship, notwithstanding that there was other evidence in the record to

support a contrary conclusion (*see Matter of Cushman & Wakefield, Inc. [Commissioner of Labor]*, 154 AD3d 1034, 1036 [2017]; *Matter of Link [Cantor & Pecorella, Inc.—Commissioner of Labor]*, 153 AD3d at 1062-1063; *Matter of Lambert [Staubach Retail Servs. New England, LLC—Commissioner of Labor]*, 18 AD3d 1049, 1050 [2005]; *Matter of Atac [Fashion Realty Group—Commissioner of Labor]*, 265 AD2d 777, 777 [1999]). To the extent that the testimony from a Kaufman representative contradicted claimant's testimony, this created a credibility issue for the Hearing Officer to resolve (*see Matter of Spielberger [Commissioner of Labor]*, 122 AD3d 998, 1000 [2014]).

Furthermore, we find no reason to disturb the Board's finding that the supervision, direction and control exercised by Kaufman was beyond the required supervision, as set forth in 19 NYCRR 175.21, of a broker over a real estate salesperson. Finally, we are unpersuaded by Kaufman's assertion that, in view of the written agreement, no employment relationship existed as a matter of law pursuant to Labor Law § 511 (19). Inasmuch as a review of the written agreement establishes that it does not set forth all of the required statutory provisions, the Board properly concluded that the services provided by claimant, as well as those similarly situated, were not excluded from the definition of employment as a matter of law (*see* Labor Law § 511 [19] [c]; *Matter of Nanwani [Greer Real Estate—Hudacs]*, 193 AD2d 1023, 1024 [1993]; *see also Matter of Joyce [Coface N. Am. Ins. Co.—Commissioner of Labor]*, 116 AD3d 1132, 1133 [2014]). Kaufman's remaining contentions have been reviewed and found to be without merit.

Egan Jr., J.P., Rose, Devine and Mulvey, JJ., concur. Ordered that the decisions are affirmed, without costs.