Matter of Courto (SCA Enters. Inc.--Commissioner of Labor) (2018 NY Slip Op 01970)





Matter of Courto (SCA Enters. Inc.--Commissioner of Labor)


2018 NY Slip Op 01970


Decided on March 22, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 22, 2018

524569

[*1]In the Matter of NICHOLAS A. COURTO, Respondent. SCA ENTERPRISES INC., Appellant. COMMISSIONER OF LABOR, Respondent.

Calendar Date: February 16, 2018

Before: McCarthy, J.P., Egan Jr., Devine, Clark and Rumsey, JJ.


Fox Rothschild LLP, New York City (Glenn S. Grindlinger of counsel), for appellant.
Christopher Hammond, Cooperstown, for Nicholas A. Courto, respondent.


Rumsey, J.

MEMORANDUM AND ORDER
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed May 20, 2016, which ruled, among other things, that SCA Enterprises Inc. was liable for unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
SCA Enterprises Inc. is engaged in the business of connecting appraisers with its clients, which are insurance carriers, to assist in processing automobile damage claims across the United States. Although it conducts the majority of its business through designated franchisees who perform appraisals in
specific geographic regions, it also utilizes independent appraisers in areas that are not covered by its franchise agreements. SCA uses a computerized operating system, known as the dashboard, to match franchisees and independent appraisers with assignments that are posted by its insurance carriers. Claimant, doing business as New Hartford Appraisal Service, is an independent appraiser who obtained assignments through SCA and filed a claim for unemployment insurance benefits after those assignments ended. The Department of Labor issued initial determinations finding that claimant was eligible to receive benefits as an employee of SCA and that SCA was liable for unemployment insurance contributions on remuneration paid to claimant and others similarly situated. Following protracted hearings, an Administrative Law Judge sustained these determinations. The Unemployment Insurance Appeal Board affirmed, and this appeal by SCA ensued.
Initially, it is well-settled that the existence of an employer-employee relationship turns on whether "the employer exercises control over the results produced or the means used to achieve the results," with the latter being more important (Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010] see Matter of Berger [Gail & Rice, Inc.-Commissioner of Labor], 143 AD3d 1024, 1025 [2016], lv denied 29 NY3d 905 [2017]). Notably, incidental control over the results, without further evidence of control over the means, is insufficient (see Matter of Hertz Corp. [Commissioner of Labor], 2 NY3d 733, 735 [2004]; Matter of Mitchell [Nation Co. Ltd. Partners-Commissioner of Labor], 145 AD3d 1404, 1405 [2016]). Furthermore, although the existence of an employment relationship is a factual issue for the Board to resolve, the Board's decision must be based upon substantial evidence consisting of "proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably — probatively and logically" (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 181 [1978]; see Matter of Mitchell [Nation Co. Ltd. Partners-Commissioner of Labor], 145 AD3d at 1406; Matter of Stiefvater Real Estate Inc. [Commissioner of Labor], 34 AD3d 1176, 1177 [2006], lv denied 8 NY3d 807 [2007]).
Upon reviewing the evidence presented here, we conclude that substantial evidence does not support the Board's finding that an employment relationship existed between SCA and the independent appraisers, including claimant. SCA's business centers around the dashboard, as this is the portal through which it matches appraisers with assignments generated by its insurance carrier clients. SCA locates potential independent appraisers through job search postings made on websites like Monster.com [FN1]. After selecting those with the legally required licensing and bonding qualifications and negotiating a mutually acceptable fee, SCA gives the independent appraisers access to the dashboard by providing them with a passcode so they may view assignments posted by the insurance carriers. The insurance carriers are also provided with a passcode to access the dashboard, as this is the means by which they post assignments, including details such as the location of the vehicle, type of appraisal report software to be utilized and other requirements. The dashboard automatically matches the independent appraisers with assignments based upon the particular geographic area. The independent appraiser is free to accept or reject an assignment and, if it is accepted, the independent appraiser then contacts the vehicle owner, conducts the appraisal and uploads the final appraisal report to the insurance carrier via the dashboard. The independent appraiser then submits an invoice to and is paid by SCA.
Significantly, SCA does not withhold taxes from the compensation that it pays to the independent appraisers, reimburse them for expenses or provide them with fringe benefits, training, equipment, tools, uniforms, business cards, supplies or office space. It also does not supervise their work, require them to attend meetings or review their final appraisal reports. Moreover, the independent appraisers set their own work schedules, are free to work for competitors, may take time off without SCA's permission and refuse assignments without penalty. The requirements of the assignment, including the deadline by which the final report must be submitted, are dictated by the insurance carriers, not SCA. If there is a problem with an appraisal report, SCA simply passes the information on to the independent appraiser. The provisions of the service contract that the independent appraisers sign with SCA designate them as independent contractors and underscore their autonomy. Although SCA supplies generic [*2]information cards to be provided to vehicle owners, provides technical support for the dashboard and negotiates favorable pricing for the appraisal software, these are merely indicia of incidental control and do not establish that SCA exercised control over the means by which the independent appraisers performed their work (see Matter of Yoga Vida NYC, Inc. [Commissioner of Labor], 28 NY3d 1013, 1016 [2016]). Accordingly, inasmuch as substantial evidence does not support the existence of an employment relationship, the Board's decisions must be reversed (see Matter of Cohen [Classic Riverdale, Inc.-Commissioner of Labor], 136 AD3d 1179, 1181 [2016]; Matter of Lauritano [Hartnett], 153 AD2d 997, 997 [1989]). In light of our disposition, we need not address SCA's remaining claim.
McCarthy, J.P., Egan Jr., Devine and Clark, JJ., concur.
ORDERED that the decisions are reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: Sometimes, as in claimant's case, independent appraisers contact SCA directly to solicit work.