Matter of Millennium Med. Care, P.C. (Commissioner of Labor) (2019 NY Slip Op 06027)





Matter of Millennium Med. Care, P.C. (Commissioner of Labor)


2019 NY Slip Op 06027


Decided on August 1, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 1, 2019

525791

[*1]In the Matter of the Claim of MILLENNIUM MEDICAL CARE, P.C., Appellant. COMMISSIONER OF LABOR, Respondent.

Calendar Date: June 7, 2019

Before: Egan Jr., J.P., Lynch, Mulvey, Devine and Rumsey, JJ.


Eric B. Kaviar, New York City, for appellant.
Letitia James, Attorney General, New York City (Dawn A. Foshee of counsel), for respondent.



MEMORANDUM AND ORDER
Lynch, J.
Appeal from a decision of the Unemployment Insurance Appeal Board, filed March 13, 2017, which assessed Millennium Medical Care, P.C. for additional unemployment insurance contributions.
Millennium Medical Care, P.C. is a professional corporation founded and organized by Michael Amoashiy, a board-certified neurologist, to provide clinical neurological services to patients in need of such care. During the relevant time period, Millennium entered into a service agreement with Brooklyn Hospital Center to provide professional medical services to the hospital for the benefit of the hospital's patients [FN1]. To do so, Millennium retained the services of, among others, neurologists, physician assistants and medical technicians, which included ultrasound and EEG (neurophysiology) technicians. As the result of an audit by the Department of Labor, it was determined that Millennium was liable for additional unemployment insurance contributions based upon remuneration paid to, among others, neurologists, physician assistants and medical technicians. That determination was ultimately sustained by the Unemployment Insurance Appeal Board, which found, in relevant part, that Millennium exercised or reserved the right to exercise sufficient supervision, direction or control over the services performed by neurologists, physician assistants and medical technicians to establish an employment relationship for purposes of the Unemployment Insurance Law. Millennium appeals.
We affirm. "Whether an employee-employer relationship exists is a factual question to be resolved by the Board, and its decision will be upheld if supported by substantial evidence" (Matter of Tauscher Cronacher PE PC [Commissioner of Labor], 148 AD3d 1491, 1492 [2017] [internal quotation marks and citations omitted], lv denied 29 NY3d 917 [2017]; see Matter of [*2]Dillon [Commissioner of Labor], 163 AD3d 1307, 1308 [2018]). "Substantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably — probatively and logically" (Matter of Yoga Vida NYC, Inc. [Commissioner of Labor], 28 NY3d 1013, 1015 [2016] [internal quotation marks, brackets and citation omitted]; see Matter of Cushman & Wakefield, Inc. [Commissioner of Labor], 154 AD3d 1034, 1035 [2017]; Matter of Mitchell [Nation Co. Ltd Partners-Commissioner of Labor], 145 AD3d 1404, 1406 [2016]). "Where, as here, the work of medical professionals is involved, the pertinent inquiry is whether the purported employer retained overall control over the work performed" (Matter of Williams [Summit Health, Inc.-Commissioner of Labor], 146 AD3d 1210, 1210 [2017] [internal quotation marks, brackets and citations omitted]; see Matter of Concourse Ophthalmology Assoc. [Roberts], 60 NY2d 734, 736 [1983]; Matter of Dillon [Commissioner of Labor], 163 AD3d at 1308; Matter of Ryan [La Cruz Radiation Consultants, Inc.-Commissioner of Labor], 138 AD3d 1324, 1325 [2016]), and "no single factor is dispositive" (Matter of O'Shea [Cayuga Emergency Physicians, LLP-Commissioner of Labor], 140 AD3d 1358, 1359 [2016]; see Matter of New York State Sheriffs' Assn., Inc. [Commissioner of Labor], 164 AD3d 979, 979 [2018]). "Further, an organization which screens the services of professionals, pays them at a set rate and then offers their services to clients exercises sufficient control to create an employment relationship" (Matter of Williams [Summit Health, Inc.-Commissioner of Labor], 146 AD3d at 1210 [internal quotation marks, brackets and citations omitted]; accord Matter of Ryan [La Cruz Radiation Consultants, Inc.-Commissioner of Labor], 138 AD3d at 1325 [internal quotation marks and citations omitted]; see Matter of Kimberg [Hudacs], 188 AD2d 781, 781 [1992]; Matter of Stat Services [Hartnett], 148 AD2d 903, 904 [1989]).
The record reflects that, to provide its neurological services, Millennium retained the services of certain neurologists who were full-time employees of Brooklyn Hospital Center and also contracted with part-time neurologists who either maintained their own private medical practice or worked for another hospital. Once retained, Millennium created the neurologists' monthly schedules, maintained records of their hours worked and paid them for their work in the clinic irrespective of whether they saw or treated patients. If a neurologist was unable to work a scheduled shift, Millennium was responsible for finding a substitute. Millennium also provided training and instruction to, and oversight of, the neurologists and fielded any patient complaints regarding the neurologists.
Pursuant to the agreement between Millennium and Brooklyn Hospital Center, the hospital was required to retain two full-time physician assistants to perform neurology services in Millennium's clinic. Millennium interviewed the physician assistants and informed the hospital of which physician assistants the hospital should hire to work in Millennium's clinic. Millennium then separately retained, and paid for, the services of these physician assistants to provide, when necessary, additional part-time, after-hours services to the clinic's patients. As for these additional at-issue services, Millennium provided instruction to, and supervised, the physician assistants, fielded any patient complaints regarding the physician assistants and could recommend disciplinary action to the hospital. Millennium made the physician assistants' schedules, set their rate of pay, found a substitute if a physician assistant was unable to work a shift and would pay them directly after receiving an invoice from the physician assistants.
As for the medical technicians retained by Millennium to perform testing in its clinic, the record demonstrates that Millennium verified the medical technicians' certificates of training and approved the retention of any technicians who worked there. Millennium scheduled the technicians' patients and, when deemed appropriate, attended and supervised the testing done for patients. To this end, Millennium inspected the testing equipment and provided instruction on how to administer various tests. Although the technicians provided their own testing equipment, Millennium provided specialized needles that Millennium required for EEG studies. Millennium established the fees and pay that the technicians would receive, and, once the technicians submitted invoices to Millennium for their work, Millennium would bill the patients' health [*3]insurance carriers. Millennium could require the medical technicians to re-administer a test if the results were deemed unacceptable by Millennium, fielded any complaints made by patients regarding the medical technicians and covered the medical technicians under its own malpractice insurance. Notwithstanding evidence in the record that might support a contrary conclusion, we find that the foregoing constitutes substantial evidence to support the Board's decision that Millennium retained sufficient overall control over the work performed by the subject neurologists, physician assistants and medical technicians to establish an employment relationship (see Matter of Williams [Summit Health, Inc.-Commissioner of Labor], 146 AD3d at 1210-1211; Matter of O'Shea [Cayuga Emergency Physicians, LLP-Commissioner of Labor], 140 AD3d at 1359; Matter of Ryan [La Cruz Radiation Consultants, Inc.-Commissioner of Labor], 138 AD3d at 1325-1326; Matter of South Shore Med. Servs. [Hudacs], 183 AD2d 1093, 1094 [1992]; Matter of Niagara Emergency Physicians Group [Hartnett], 174 AD2d 911, 911 [1991]; Matter of Stat Services [Hartnett], 148 AD2d at 903-904). To the extent that Millennium's remaining contentions are not addressed, they have been considered and found to be without merit.
Egan Jr., J.P., Mulvey, Devine and Rumsey, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: In 2004, and during the time period in question, Amoashiy was appointed Chief of the Division of Neurology within the Department of Internal Medicine at Brooklyn Hospital Center.