Matter of Hawkins (A Place for Rover Inc.--Commissioner of Labor) (2021 NY Slip Op 05748)





Matter of Hawkins (A Place for Rover Inc.--Commissioner of Labor)


2021 NY Slip Op 05748


Decided on October 21, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:October 21, 2021

530002
[*1]In the Matter of the Claim of Benjamin Hawkins, Respondent. A Place for Rover Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date:September 17, 2021

Before:Garry, P.J., Egan Jr., Lynch, Clark and Pritzker, JJ.

Ogletree, Deakins, Nash, Smoak & Stewart PC, New York City (Robert M. Tucker of counsel), for appellant.
Teresa C. Mulliken, Harpersfield, for Benjamin Hawkins, respondent.
Letitia James, Attorney General, New York City (Mary Hughes of counsel), for Commissioner of Labor, respondent.



Lynch, J.
Appeal from a decision of the Unemployment Insurance Appeal Board, filed August 12, 2019, which ruled, among other things, that A Place for Rover Inc. was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
A Place for Rover Inc. (hereinafter Rover) operates an online platform, accessed through its website or a smartphone application, that connects pet owners with pet service providers or "sitters" who offer pet boarding, sitting, walking, day care and drop-in services. Rover employs approximately 200 people in its Seattle, Washington headquarters, who primarily provide technological and customer service support, and its platform contains profiles for about 85,000 service providers nationwide. Claimant worked as a provider for approximately one year, from 2015 to 2016 in Brooklyn, when he applied for unemployment insurance benefits.[FN1] The Department of Labor issued an initial decision finding that claimant was an employee of Rover, which was responsible for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated. Rover objected, contending that claimant and the other providers were independent contractors and, following a hearing, an Administrative Law Judge upheld the initial determination. The Unemployment Insurance Appeal Board affirmed, and Rover appeals.
"[W]hether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the
. . . [B]oard, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary decision" (Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010] [internal quotation marks, brackets and citations omitted]; see Matter of Lowry [Uber Tech., Inc.-Commissioner of Labor], 189 AD3d 1863, 1863 [2020], lv dismissed ___ NY3d ___ [Oct. 14, 2021]). In making the determination regarding employment status, "[a]ll aspects of the arrangement" must be considered, "[b]ut the touchstone of the analysis is whether the employer exercised control over the results produced by the worker or the means used to achieve the results" (Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 137 [2020] [internal quotation marks and citation omitted]). To that end, "the relevant indicia of control will necessarily vary depending on the nature of the work" (id.).
A review of the testimony of the sole witness, Rover's legal manager,[FN2] and the documentary evidence demonstrates that Rover did not, in any respect, exercise control over the manner in which providers completed the pet services that they were retained to perform for the owners, the means used to supply those services or the results produced (see Matter of Walsh [TaskRabbit Inc.-Commissioner [*2]of Labor], 168 AD3d 1323, 1324-1325 [2019]; see also Matter of Jordan [Alterna Holdings Corp.-Commissioner of Labor], 187 AD3d 1264, 1265-1266 [2020]; compare Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d at 135-140; Matter of Lowry [Uber Tech., Inc.-Commissioner of Labor], 189 AD3d at 1864-1866). The evidence established that providers set up an account and create a profile indicating which services they will provide and at what price; after they pass a background check, their profile is reviewed for completeness and appropriateness and, if their profiles are in order, they are activated and they become providers. No particular experience is required, although providers may include it on their profile, and no training is required, only optional tutorials offered by Rover. Further, provider homes and cars are not inspected. Significantly, providers establish their own rates, the geographic area where they will offer services and which specific services they will perform, and they determine their own availability and schedule. They are permitted to work for Rover's competitors. Although Rover's manager testified that providers must sign a contract containing the terms of service and testified regarding those terms, an example of which was admitted as an exhibit, he also testified that Rover did not have a contract with claimant and no signed contract was admitted into evidence.
The manager's testimony established that owners search the site by date, location and service needed and the platform generates a list of profiles for available providers meeting the criteria searched; the owner then reviews the provider profiles, selects which person to use and contacts the selected provider, often meeting in advance of services to be sure both sides are satisfied. Either side may decline to do business, and providers may not use substitutes after owners book services with them. Owners communicate any care instructions for their pets directly to the providers. For privacy reasons, all communication is through the site and no personal information is exchanged. Once the owner and the provider agree on terms, at the time of the booking the owner pays a third-party payment provider for the services, the money is held until after the services are completed, Rover takes 20%[FN3] to cover its overhead expenses and then the balance is transferred to the provider's account. Providers may select their own cancellation policy, which is reflected on their profiles; although there is a cancellation policy for providers, it is not strictly enforced. Rover does not provide office space, supplies or equipment, although it offers the option to purchase supplies, and it does not reimburse providers for any expenses. Rover procures liability insurance to cover the pets and any third parties in the event of injury, but does not insure the providers. Rover provides owners with replacement options if the provider has to cancel at the last minute, and [*3]offers emergency advice to the provider regarding lost or ill pets or if there is a problem with a pet during a service that cannot be resolved with the owner.
The foregoing is significant in that it reflects that providers control their own rates and the services they will offer, and they exercise almost unfettered discretion over how to perform what are essentially personal services for owners' pets, services that are unique to the providers and their personal pet-caring skills (see Matter of Yoga Vida NYC, Inc. [Commissioner of Labor], 28 NY3d 1013, 1015-1016 [2016]; compare Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d at 138-139). Unlike other online platforms, the owners select which particular provider to retain, often meeting in advance to assess the provider firsthand; Rover does not dictate which provider will service the owner, when or the manner in which those services are to be rendered, or monitor the ongoing services or location of the provider (see Matter of Walsh [TaskRabbit Inc.-Commissioner of Labor], 168 AD3d at 1324-1325; compare Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d at 138; Matter of Lowry [Uber Tech., Inc.-Commissioner of Labor], 189 AD3d at 1864-1866). As such, Rover only exercises control over the platform that a provider uses to find client pet owners and not any part of the job itself (see Matter of Walsh [TaskRabbit Inc.-Commissioner of Labor], 168 AD3d at 1324), and this type of incidental control over the provider's services is insufficient to establish an employer-employee relationship (see Matter of Hertz Corp. [Commissioner of Labor], 2 NY3d 733, 735 [2004]; Matter of Mitchell [Nation Co. Ltd Partners-Commissioner of Labor], 145 AD3d 1404, 1405 [2016]). More analogous to fitness instructors and odd-job taskers, and, in contrast to Uber drivers or Postmates couriers, providers are individually selected by their client pet owners and "have the ability to create a following or generate their own [repeat] customer base" (Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d at 140). As Rover does not exercise any control over the manner in which the providers perform their services, the means used or results produced, substantial evidence does not support the Board's determination that Rover exercised sufficient direction, supervision and control over the providers to demonstrate an employment relationship, and the determination must be reversed (see Matter of Yoga Vida NYC, Inc. [Commissioner of Labor], 28 NY3d at 1015; compare Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d at 136-140).
Finally, Rover's contention that claimant was not totally unemployed (see Labor Law § 522), first raised at the end of the hearing, was not resolved at the hearing and is not properly before us.
Garry, P.J., Egan Jr., Clark and Pritzker, JJ., concur.
ORDERED that the decision is reversed, without costs, and matter remitted to the Unemployment Insurance Appeal [*4]Board for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: The record does not reflect the circumstances under which claimant ceased working for Rover.

Footnote 2: When contacted at the outset of the hearing, claimant indicated that he would not be participating as he did not contest the initial decision, and he did not testify.

Footnote 3: The fee was raised to 27% in mid-2016 but only applied to new providers.