Matter of Gisser (iTutor.com, Inc.--Commissioner of Labor) (2022 NY Slip Op 07107)

Matter of Gisser (iTutor.com, Inc.--Commissioner of Labor)

2022 NY Slip Op 07107

Decided on December 15, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 15, 2022

533670
[*1]In the Matter of the Claim of Nicole Gisser, Respondent. iTutor.com, Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date:November 21, 2022

Before:Egan Jr., J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

Campolo, Middleton & McCormick, LLP, Ronkonkoma (Christine Malafi of counsel), for appellant.
David E. Woodin, Catskill, for Nicole Gisser, respondent.
Letitia James, Attorney General, New York City (Linda D. Joseph of counsel), for Commissioner of Labor, respondent.

Egan Jr., J.P.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed January 7, 2021, which ruled that iTutor.com, Inc. was liable for unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
iTutor.com, Inc. is an online platform that provides tutoring services to clients by retaining a list of private tutors, including claimant, who have met state certification requirements and been assessed by iTutor through the submission of a prerecorded "demo" lesson. These tutors provide services to clients by way of live video sessions through iTutor's online portal, which are simultaneously recorded. Claimant applied for unemployment insurance benefits and, in September 2019, the Department of Labor determined that she was an employee of iTutor and that iTutor was liable for remuneration paid to her and others similarly situated. iTutor objected and requested a hearing, following which an Administrative Law Judge sustained iTutor's objection and overruled the determination. Upon review, the Unemployment Insurance Appeal Board reversed, finding that claimant was an employee of iTutor and thus was eligible for benefits based upon remuneration paid to her and others similarly situated. iTutor appeals.
"Whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the Board, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Legros [Northeast Logistics, Inc.-Commissioner of Labor], 205 AD3d 1245, 1246 [3d Dept 2022] [internal quotation marks and citations omitted]). "Substantial evidence is a minimal standard requiring less than a preponderance of the evidence. As such, if the evidence reasonably supports the Board's choice, we may not interpose our judgment to reach a contrary conclusion" (Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 136-137 [2020] [internal quotation marks, brackets and citations omitted]). "[T]he Board considers a number of factors in determining whether a worker is an employee or an independent contractor, examining all aspects of the arrangement. But the touchstone of the analysis is whether the employer exercised control over the results produced by the worker or the means used to achieve the results" (id. at 137 [internal quotation marks and citations omitted]; accord Matter of Chichester [Northeast Logistics, Inc.-Commissioner of Labor], 204 AD3d 1195, 1196 [3d Dept 2022]). "An organization which screens the services of professionals, pays them at a set rate and then offers their services to clients exercises sufficient control to create an employment relationship" (Matter of Eisenberg [CenseoHealth LLC-Commissioner of Labor], 205 AD3d 1185, 1186 [3d Dept 2022] [internal quotation marks, brackets and [*2]citations omitted]; accord Matter of Patsis [Geneva Worldwide Inc.-Commissioner of Labor], 204 AD3d 1278, 1279 [3d Dept 2022]).
The record here reflects that, to become a tutor with iTutor, claimant submitted an application and resume and provided a recording of a mock lesson to determine if she had the "ability" to adequately tutor. These materials were reviewed by iTutor and claimant's application was approved. Claimant submitted to a background check and then signed a written agreement with iTutor setting forth the terms of service. Subsequently, claimant signed a separate agreement outlying "the minimum standards of professional conduct" required. School districts communicated requests for tutors directly to iTutor and, in turn, iTutor sent an email to all tutors allowing them to accept the session if they were available and met specified criteria. These sessions are accepted on a first-come, first-served basis and claimant was able to refuse any assignment; if she had accepted an assignment, however, she was required to notify iTutor at least 24 hours prior thereto if she could no longer complete the session and iTutor would provide a replacement.
After accepting an assignment, claimant communicated with the school district to determine the needs of the student and a schedule, all through iTutor's online portal. Claimant would then put together a lesson plan that fit the student's needs, and conduct the lesson in accordance with the format and model set forth by iTutor. After all sessions, claimant was required to submit a report to iTutor detailing the student's progress. These sessions were also recorded in the event that iTutor received a complaint from a student and to allow iTutor to provide tutor feedback. iTutor handled all billing to the school districts and any complaints received therefrom and, moreover, claimant had no control of her rate of pay or the frequency with which she was paid, which was set by iTutor. Claimant was required to participate in training prior to her first tutoring session and additional professional development trainings thereafter and was provided feedback by an individual directly employed by iTutor. If a tutor was determined to be performing inadequately, assignments could be withheld because this reflected poorly on iTutor. Claimant would be paid if the student did not show, so long as she conducted a "mini-lesson" that the student could access later and, similarly, she would be paid even if the school district had not paid iTutor. iTutor required claimant to have a computer, webcam, headset and Internet connectivity, for which claimant was responsible for the cost, and required her to dress in a professional manner. Tutors were able to teach outside of iTutor and claimant did so.
Although claimant testified that iTutor required her to follow state education guidelines, this is not a situation where iTutor exercised only "some indicia of control . . . necessitated by regulatory and legal requirements[*3]," which would be inadequate to establish an employment relationship (Matter of Kablan [Medical Delivery Servs.-Commissioner of Labor], 201 AD3d 1220, 1221 [3d Dept 2022]; see generally Matter of Levick [Rosen Publ. Group Inc.-Commissioner of Labor], 200 AD3d 1229, 1230 [3d Dept 2021]). As the foregoing constitutes substantial evidence for the Board's finding of an employment relationship between iTutor and claimant and those similarly situated, the Board's decisions will not be disturbed, notwithstanding evidence that could support a contrary result (see Matter of Patsis [Geneva Worldwide Inc.-Commissioner of Labor], 204 AD3d at 1280; Matter of Tannenbaum [A Class Act NY, LLC-Commissioner of Labor], 199 AD3d 1078, 1080 [3d Dept 2021]; Matter of Ritch [Island Tutoring Ctr., Inc.-Commissioner of Labor], 139 AD3d 1151, 1153 [3d Dept 2016]; Matter of Ivy League Tutoring Connection, Inc. [Commissioner of Labor], 119 AD3d 1260, 1261 [3d Dept 2014]; compare Matter of Hawkins [A Place for Rover Inc.-Commissioner of Labor], 198 AD3d 1120, 1123 [3d Dept 2021]).
Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ., concur. ordered that the decisions are affirmed, without costs.