Matter of Jensen (Partnership for Response & Recovery, LLP--Commissioner of Labor) (2019 NY Slip Op 09073)





Matter of Jensen (Partnership for Response & Recovery, LLP--Commissioner of Labor)


2019 NY Slip Op 09073


Decided on December 19, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 19, 2019

528553

[*1]In the Matter of the Claim of Michael Jensen, Claimant. Partnership for Response and Recovery, LLP, Appellant. Commissioner of Labor, Respondent.

Calendar Date: November 12, 2019

Before: Garry, P.J., Egan Jr., Lynch and Aarons, JJ.


Hunton Andrews Kurth LLP, New York City (Joseph J. Saltarelli of counsel), for appellant.
Letitia James, Attorney General, New York City (Mary Hughes of counsel), for respondent.



Garry, P.J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed May 17, 2018, which ruled, among other things, that Partnership for Response and Recovery, LLP was liable for unemployment insurance contributions on renumeration paid to claimant and others similarly situated.
Partnership for Response and Recovery, LLP (hereinafter PaRR) had a contract with the Federal Emergency Management Agency (hereinafter FEMA) to coordinate inspections of homes that were damaged in federally-declared natural disaster areas. PaRR retained outside individuals to inspect damaged properties to ascertain if the homeowners qualified for federal government assistance. Following Hurricane Sandy, claimant accessed PaRR's website and completed the documentation necessary to become a home inspector. He went to PaRR's field office for two days of training and, after clearing a criminal background check, he was provided with a computer and a camera belonging to FEMA, as well as invoice forms to be used to obtain payment. Claimant used the computer to receive assignments electronically from FEMA and performed a number of home inspections between November 7, 2012 and November 24, 2012. After these assignments ended, he applied for unemployment insurance benefits.
The Department of Labor issued initial determinations finding that PaRR was claimant's employer and was liable for additional unemployment insurance contributions. Following a hearing, an Administrative Law Judge overruled these determinations. On appeal, the Unemployment Insurance Appeal Board found that an employment relationship existed between claimant and PaRR, and it reversed the Administrative Law Judge's decisions. Accordingly, the Board ruled that PaRR was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated, and that claimant was eligible to receive benefits. PaRR appeals.
Initially, the existence of an employment relationship is a factual issue for the Board to resolve and its determination will be upheld if supported by substantial evidence (see Matter of Empire State Towing & Recovery Assn., Inc., 15 NY3d 433, 437 [2010]; Matter of Magdylan [Munschauer-Commissioner of Labor], 172 AD3d 1832, 1833 [2019]). Where the work at issue involves professional services, like home inspections, the "relevant inquiry becomes whether the purported employer retains overall control of important aspects of the services performed" (Matter of Tauscher Cronacher PE PC [Commissioner of Labor], 148 AD3d 1491, 1492 [2017] [internal quotation marks and citations omitted], lv denied 29 NY3d 917 [2017]; see Matter of Jaeger [Vendor Control Serv., Inc.-Commissioner of Labor], 106 AD3d 1360, 1360 [2013]; see also Matter of Philip [Brody-Commissioner of Labor], 164 AD3d 992, 993 [2018]). "Furthermore, where some indicia of control is necessitated by regulatory and legal requirements, such indicia will not, standing alone, be sufficient to establish an employment relationship" (Matter of Crystal [Medical Delivery Servs.-Commissioner of Labor], 150 AD3d 1595, 1596 [2017] [citations omitted]).
Here, PaRR relied on its website to find individuals, like claimant, who were looking to perform home inspections. These individuals accessed PaRR's website and indicated their interest in being deployed to a particular disaster area. PaRR notified them via email of their particular assignments. After being selected, the inspectors obtained specific information about the homes to be inspected electronically from FEMA and contacted the homeowners directly to conduct the actual inspections. After the inspections were completed, the inspectors sent their inspection reports electronically to FEMA.
Before the inspectors were deployed to a particular disaster area, PaRR set up a field operation near the site where it distributed FEMA-issued computers and cameras to the inspectors. In addition, for the inspectors' convenience, it provided them with invoice forms containing the information required by FEMA to be used to receive payment. PaRR also supplied them with an identification badge bearing its logo and offered them training on how to utilize the FEMA computer system and comply with FEMA's requirements. PaRR set the rate of pay at $62.50 per inspection, paid inspectors even if it had not yet received payment from FEMA, reimbursed them for travel to the site of the assignment and provided compensation for prepositioning to the site. Moreover, it conducted a quality review of 3% of the inspection reports and encouraged inspectors to complete their reports within three days as requested by FEMA. PaRR also provided field support to the inspectors to assist them with completing their inspection reports and using the FEMA computer system.
Although claimant and the other inspectors worked independently and without any supervision from PaRR in conducting the actual inspections, the evidence demonstrates that PaRR retained overall control over many important aspects of their work. Although some of this control emanated from the regulatory requirements imposed by FEMA, this was not to such an extent as to negate the existence of an employment relationship (see Matter of Raupov [Empire City Labs., Inc.-Commissioner of Labor], 155 AD3d 1284, 1285 [2017]; Matter of Crystal [Medical Delivery Servs.-Commissioner of Labor], 150 AD3d at 1597; compare Matter of Giordano [Tender Age PT Inc.-Commissioner of Labor], 161 AD3d 1398, 1400-1401 [2018]). Given that substantial evidence supports the Board's decisions, we find no reason to disturb them.
Egan Jr., Lynch and Aarons, JJ., concur.
ORDERED that the decisions are affirmed, without costs.