Lahtinen, J.P.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed January 2, 2014, which ruled, among other things, that LaValle Transportation, Inc. was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
*1218 LaValle Transportation, Inc. is a commercial trucking company providing freight transportation services nationwide. Some of the local routes are driven by individuals who are employees of LaValle, whereas the long-haul trucking is done by drivers who own or lease their vehicles and work under transportation service agreements as independent contractors. When claimant — who had been a long-haul trucker — filed for unemployment insurance benefits after his work with another company ended, the Department of Labor indicated to him that his earlier time with LaValle might be considered as part of his necessary employment history (see Labor Law § 527 [1], [2]) despite his representation that he had been an independent contractor and not an employee of LaValle. The Department audited LaValle’s operations from January 1, 2006 to December 31, 2008 and determined that claimant and other similarly situated truck drivers were, in fact, employees of LaValle. The Department assessed LaValle $124,000.17 for contributions during that time frame.* LaValle objected and, following a hearing, an Administrative Law Judge overruled the Department. However, upon administrative appeal, the Unemployment Insurance Appeal Board reversed the Administrative Law Judge and found that LaValle was an employer of the truck drivers for purposes of the Labor Law. LaValle appeals.
“ ‘An employer-employee relationship exists when the evidence shows that the employer exercises control over the results produced or the means used to achieve the results’ with the second factor deemed to be more important” (Matter of Cohen [Classic Riverdale, Inc. — Commissioner of Labor], 136 AD3d 1179, 1179 [2016], quoting Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010]). Although the Board’s determination of an employment relationship “will be upheld if supported by substantial evidence, ‘incidental control over the results produced, alone, will not constitute substantial evidence that an employment relationship exists’ ” (Matter of Richins [Quick Change Artistry, LLC — Commissioner of Labor], 107 AD3d 1342, 1343-1344 [2013] [internal citation omitted], quoting Matter of Best [Lusignan — Commissioner of Labor], 95 AD3d 1536, 1537 [2012]). Moreover, where, as here, some of the indicia of control are mandated by laws or regulations, such *1219 fact, while “considered as part of the overall calculus of control,” by itself is “not sufficient to establish an employer-employee relationship” (Matter of Harold [Leonard’s Transp. — Commissioner of Labor], 133 AD3d 1069, 1070 [2015] [internal quotations marks omitted], lv dismissed 26 NY3d 1136 [2016]; accord Matter of Cohen [Just Energy Mktg. Corp. — Commissioner of Labor], 117 AD3d 1112, 1112-1113 [2014], lv dismissed 24 NY3d 928 [2014]; see Matter of 12 Cornelia St. [Ross], 56 NY2d 895, 898 [1982]; Matter of Leazard [TestQuest, Inc. — Commissioner of Labor], 74 AD3d 1414, 1414-1415 [2010]; Matter of McCabe & Willig Realty [Ross], 80 AD2d 935, 936 [1981]).
Here, long-haul drivers called a LaValle dispatcher to find out what loads were available. The drivers were free to accept or reject any load without penalty from LaValle. Simply stated, they could work when and if they wanted or not at all. Significantly, and unlike Matter of Harold (Leonard’s Transp. — Commissioner of Labor) (133 AD3d at 1071) and Matter of Scott (CR England Inc. — Commissioner of Labor) (133 AD3d 935, 939 [2015]), the drivers were not required to work exclusively for LaValle and were free to accept jobs with other companies. Moreover, they were not required to lease their vehicles from LaValle. In fact, it is undisputed that about 40% of the drivers owned their vehicles and, of the remaining 60%, only about half leased from LaValle. Subject to compliance with insurance and regulatory requirements, the drivers who agreed to transport loads were allowed to hire other drivers to make the delivery and, in fact, some did so. The compensation rate for the drivers was not set solely by LaValle. Although drivers typically received 70% of the gross revenue for transporting the load, they were free to negotiate a higher percentage from LaValle, and the record reflects that such higher negotiated rates were not rare.
No one from LaValle supervised the drivers. They were free to choose whatever routes they desired in transporting loads. The drivers received no fringe benefits, there was no dress code, they were not required to attend meetings, they were not trained by LaValle and they were not reimbursed for their expenses. Drivers carried their own independent business cards. Claimant testified that he considered himself an independent contractor. He was issued an IRS 1099 form, and he reported that he was self-employed on his state and federal taxes. Many of the factors cited by the Board were required by federal regulations or insurance carriers, and the fact that there was a limited noncompete clause in the transportation service agreement is not dispositive (see Matter of Clarke [Select *1220 Med. Corp., Inc. — Commissioner of Labor], 139 AD3d 1285, 1286 [2016]; Matter of Wright [Mid Is. Therapy Assoc. LLC — Commissioner of Labor], 134 AD3d 1216, 1218 [2015]). LaValle and the long-haul drivers met virtually none of the criteria typically considered for an employer-employee relationship (see e.g. Matter of Spielberger [Commissioner of Labor], 122 AD3d 998, 999 [2014]; Matter of Local 54 United Paperworkers Intl. Union [Commissioner of Labor], 301 AD2d 922, 923 [2003]; Matter of Cromer [Transworld Sys. — Sweeney], 248 AD2d 773, 774 [1998]; see also Department of Labor Guidelines, Independent Contractors, http://www.labor.ny.gov/formsdocs/ui/ IA318.14.pdf [accessed Apr. 25, 2016]; Jonathan L. Sulds, New York Employment Law § 2.02 [2]). While there was some “incidental control over ancillary matters . . . , the record as a whole lacks substantial evidence of the requisite level of control . . . so as to establish the existence of an employer-employee relationship” (Matter of Richins [Quick Change Artistry, LLC— Commissioner of Labor], 107 AD3d at 1344; see generally Matter of Hertz Corp. [Commissioner of Labor], 2 NY3d 733, 735 [2004]; 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 179-180 [1978]; Matter of Choto v Consolidated Lbr. Transp., Inc., 82 AD3d 1369, 1369-1370 [2011]).
Briefly addressing the dissent. The dissent looks initially to the equipment lease agreement between claimant and LaValle for indicia of control. However, in its detailed decision, the Board placed no reliance on the lease. The Board’s decision sought to sweep all drivers associated with LaValle (the majority of whom did not lease from LaValle) into the employee category, an overreach by the Board that the dissent appears to acknowledge. Moreover, the transportation service agreement’s language regarding “exclusive possession, control, and use” found in paragraph 6 is required by federal regulation when there is a lease (see 49 CFR 376.12 [c] [1]), and that same regulation provides that nothing in paragraph (c) (1) is intended to affect whether a driver is an employee or independent contractor (see 49 CFR 376.12 [c] [4]). Similarly, paragraph 24 of the transportation service agreement, which is quoted in part by the dissent, also makes repeatedly clear that the provisions therein are made to comply with the regulations and requirements of the Federal Motor Carrier Safety Administration. The portion of paragraph 24 noted by the dissent that indicates LaValle is authorized to “bind” the “[c]ontractor” is followed by a sentence in the agreement stating that the “[contractor has the final right of refusal on all loads.” As for the noncompetition clause, there is no indication that it was ever enforced, the proof regarding the drivers’ autonomy *1221 reflects that it was not, and the Board made only a very brief mention of it with no apparent weight given thereto.
Garry and Mulvey, JJ., concur.

 The parties agree that inasmuch as the period in dispute predates the April 10, 2014 effective date of Labor Law article 25-C (see L 2013, ch 558, § 1; L 2014, ch 7, § 1), such statute is inapplicable to the current dispute. The holding herein is limited to the law as it existed prior to the enactment of such statute.