In the Matter of the Claim of ROBERT A. CRYSTAL, Respondent. MEDICAL DELIVERY SERVICES, Appellant; COMMISSIONER OF LABOR, Respondent. [55 NYS3d 518]—

Peters, P.J. Appeals from two decisions of the Unemployment Insurance Appeal Board, filed October 28, 2015, which ruled, among other things, that Medical Delivery Services was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.

Medical Delivery Services (hereinafter MDS) is a provider of courier services specializing in the transportation of time-sensitive radioactive medications that is regulated by state and

federal law. MDS engaged the services of drivers to transport these medications and contracted with Subcontracting Concepts Inc. (hereinafter SCI), a payroll company, to act as the third-party administrator to handle employment-related matters involving the drivers. Claimant responded to an advertisement placed by MDS and, after satisfying necessary requirements, was retained as a driver using his own vehicle. He entered into an owner/operator agreement with SCI in connection therewith. When this work ended, he filed a claim for unemployment insurance benefits. This prompted the Department of Labor to undertake an inquiry to ascertain the nature of the relationship between MDS and claimant, as well as other drivers. The Department concluded that an employment relationship existed and determined that MDS was liable for additional contributions on remuneration paid to claimant and others similarly situated. Following an evidentiary hearing, an Administrative Law Judge sustained these determinations and the Unemployment Insurance Appeal Board ultimately agreed. MDS now appeals.

MDS challenges the Board's assessment of additional contributions based upon its finding of an employment relationship. It is well settled that "[w]hether an employer-employee relationship exists is a question of fact, to be decided on the basis of evidence from which it can be found that the alleged employer exercises control over the results produced . . . or the means used to achieve the results" (*Matter of Charles A. Field Delivery Serv. [Roberts]*, 66 NY2d 516, 521 [1985] [internal quotation marks and citation omitted]; *see Matter of Desravines [Logic Corp.—Commissioner of Labor]*, 146 AD3d 1205, 1206 [2017]). Notably, control over the means is the more important factor as it has been recognized that "[i]ncidental control over the results produced—without further evidence of control over the means employed to achieve the results—will not constitute substantial evidence of an employer-employee relationship" (*Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor]*, 15 NY3d 433, 437 [2010] [internal quotation marks and citation omitted]; *see Matter of Mitchell [Nation Co. Ltd Partners—Commissioner of Labor]*, 145 AD3d 1404, 1405-1406 [2016]). Furthermore, where some indicia of control is necessitated by regulatory and legal requirements, such indicia will not, standing alone, be sufficient to establish an employment relationship (*see Matter of Bogart [LaValle Transp., Inc.—Commissioner of Labor]*, 140 AD3d 1217, 1218-1219 [2016]; *Matter of Harold [Leonard's Transp.—Commissioner of Labor]*, 133 AD3d 1069, 1070 [2015], *lv dismissed* 26 NY3d 1136 [2016]).

Here, MDS placed the advertisement for owner/operator drivers and, when claimant responded, it conducted the initial interview and screening, paid for necessary drug tests and provided claimant with hazardous material training that was required by the Department of Transportation. Although claimant was actually paid by SCI and was designated an independent contractor under the owner/operator agreement, MDS provided SCI with the funds to pay claimant, set claimant's pay rate at 59 cents per mile and dictated other aspects of his compensation, including reimbursement for tolls and fuel surcharges. Significantly, claimant dealt with MDS, not SCI, in the performance of his work duties.

In accordance with regulatory and legal requirements, MDS required claimant to adhere to a strict delivery schedule, report each delivery via his cell phone and submit specific invoices to MDS for each delivery. In addition, MDS required claimant to carry certain safety equipment in his vehicle, including a dosimeter, which MDS monitored to detect radiation levels. MDS also imposed a dress code, providing claimant with polo shirts bearing its logo, and furnished him with an identification badge, lanyard and clipboard advertising its name. Furthermore, in the event that claimant wanted to take time off, he needed to provide MDS with advance notice, and MDS, not claimant, selected the replacement driver. Although much of the control exercised by MDS was occasioned by the highly regulated nature of the work performed, many other aspects of the control that MDS exercised were not. In view of the foregoing, we find that substantial evidence supports the Board's finding of an employment relationship notwithstanding the evidence that would support a contrary conclusion (*see Matter of Harold [Leonard's Transp.—Commissioner of Labor]*, 133 AD3d at 1071; *Matter of Scott [CR England Inc.—Commissioner of Labor]*, 133 AD3d 935, 938-939 [2015]). To the extent that MDS further contends that the Board's finding should not be applied to other drivers similarly situated, we find this claim to be without merit (*see Matter of Mitchum [Medifleet, Inc.—Commissioner of Labor]*, 133 AD3d 1156, 1157 [2015]).

McCarthy, Egan Jr., Devine and Mulvey, JJ., concur. Ordered that the decisions are affirmed, without costs.