Matter of Vega (Commissioner of Labor) (2018 NY Slip Op 04610)





Matter of Vega (Commissioner of Labor)


2018 NY Slip Op 04610


Decided on June 21, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 21, 2018

525233

[*1]In the Matter of the Claim of LUIS A. VEGA, Respondent. POSTMATES INC., Appellant. COMMISSIONER OF LABOR, Respondent.

Calendar Date: March 27, 2018

Before: Egan Jr., J.P., Lynch, Devine, Clark and Mulvey, JJ.


Quinn Emanuel Urquhart & Sullivan, LLP, New York City (David M. Cooper of counsel), for appellent.
Francis J. Smith, Albany, for Luis A. Vega, respondent.
Barbara D. Underwood, Attorney General, New York City (Mary Hughes of counsel), for Commissioner of Labor, respondent.


Egan Jr., J.P.

MEMORANDUM AND ORDER
Appeal from a decision of the Unemployment Insurance Appeal Board, filed September 29, 2016, as resettled by a decision filed October 11, 2016, which ruled, among other things, that Postmates Inc. was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Postmates Inc. operates a web-based platform that allows customers to request on-demand pick-up and delivery service from local restaurants or stores, which deliveries are usually made within about an hour. Claimant, who was engaged as a courier for Postmates, applied for unemployment insurance benefits after Postmates terminated its relationship with him based upon alleged negative consumer feedback and/or fraudulent activity. The Unemployment Insurance Appeal Board, reversing a decision by an Administrative Law Judge, determined that an employer-employee relationship existed and deemed Postmates liable for additional unemployment insurance contributions on remuneration paid to claimant and those similarly [*2]situated. Postmates now appeals, and we reverse.[FN1]
"Whether an employer-employee relationship exists is a question of fact, to be decided on the basis of evidence from which it can be found that the alleged employer exercises control over the results produced . . . or the means used to achieve the results" (Matter of Charles A. Field Delivery Serv. [Roberts], 66 NY2d 516, 521 [1985] [internal quotation marks and citation omitted]; see Matter of Bogart [LaValle Transp., Inc.-Commissioner of Labor], 140 AD3d 1217, 1218 [2016]). The Board's determination of an employment relationship will be upheld if supported by substantial evidence; however, "[i]ncidental control over the results produced — without further evidence of control over the means employed to achieve the results — will not constitute substantial evidence of an employer-employee relationship" (Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010] [internal quotation marks and citation omitted]; see Matter of Hertz Corp. [Commissioner of Labor], 2 NY3d 733, 735 [2004]; Matter of Courto [SCA Enters. Inc.-Commissioner of Labor], 159 AD3d 1240, 1241 [2018]).
Here, in order to work as a courier or delivery professional for Postmates, claimant and others similarly situated need only download Postmates' application software platform and provide his or her name, telephone number, Social Security number and driver's license number; there is no application and no interview. Although Postmates thereafter obtains a criminal background check from a third-party provider and provides an orientation session on how to utilize the application software platform, significantly, claimant and those similarly situated are not thereafter required to report to any supervisor, and they unilaterally retain the unfettered discretion as to whether to ever log on to Postmates' platform and actually work. When a courier does elect to log on to the platform, indicating his or her availability for deliveries, he or she is free to work as much or little as he or she wants — there is no set work schedule, there is no minimum time requirement that a courier must remain logged on to the platform and there is no minimum or maximum requirement with respect to the number of deliveries a courier must perform. In fact, once logged on to the platform, a courier may decline to do anything. When a customer requests a delivery using Postmates' platform, the platform identifies the closest available courier(s) and sends basic information about the delivery request. Couriers, however, may accept, reject or ignore a delivery request, without penalty. Moreover, while logged on to Postmates' platform, couriers maintain the freedom to simultaneously work for other companies, including Postmates' direct competitors. Further, they are free to choose the mode of transportation they wish to use for deliveries, they provide and maintain their own transportation, they choose the route they wish to take for the delivery, they are not required to adhere to a stringent delivery schedule, they are not required to wear a uniform, they are not provided any identification card or logo, they are only paid for the deliveries they complete and they are not reimbursed for any of their delivery-related expenses.
While proof was submitted with respect to Postmates' incidental control over the couriers, including, among other things, the fact that Postmates determines the fee to be charged, determines the rate to be paid, tracks the subject deliveries in real time and handles customer complaints, in our view, such proof does not constitute substantial evidence of an employer-employee relationship to the extent that it fails to provide sufficient indicia of Postmates' control [*3]over the means by which these couriers perform their work (see Matter Yoga Vida NYC, Inc. [Commissioner of Labor], 28 NY3d 1013, 1016 [2016]; Matter of Courto [SCA Enters. Inc.-Commissioner of Labor], 159 AD3d at 1241-1242). Thus, on the record before us, we find that the Board's decision is not supported by substantial evidence as the relationship between claimant and Postmates lacks the requisite indicia of supervision, direction and control necessary to establish an employer-employee relationship (see Matter Yoga Vida NYC, Inc. [Commissioner of Labor], 28 NY3d at 1015-1016; Matter of TMR Sec. Consultants, Inc. [Commissioner of Labor], 145 AD3d 1402, 1403-1404 [2016]; Matter of Bogart [LaValle Transp., Inc.-Commissioner of Labor], 140 AD3d at 1219; Matter of Chan [Market Force Info.-Commissioner of Labor], 128 AD3d 1146, 1146-1147 [2015]; Matter of Jennings [American Delivery Solution, Inc.-Commissioner of Labor], 125 AD3d 1152, 1153 [2015]; Matter of Holleran [Jez Enters., Inc.-Commissioner of Labor], 98 AD3d 757, 758-759 [2012]; compare Matter of Crystal [Medical Delivery Servs.-Commissioner of Labor], 150 AD3d 1595, 1597 [2017]). Accordingly, the Board's decision must be reversed.
Devine and Mulvey, JJ., concur.




Lynch, J. (dissenting).


We respectfully dissent. The record establishes that Postmates, Inc. advertises for and conducts criminal background checks on couriers. It provides an informational session for the couriers on how to utilize the application software platform in order to accept delivery assignments. Postmates provides couriers with a PEX reloadable credit card onto which it can load money in the event that a customer requests that a courier also purchase an item to be delivered. Couriers sign an independent acknowledgment agreement, indicating the mode of transportation they will use for deliveries (e.g., walk or drive). Couriers are free to log onto the platform — indicating their availability — as often or as little as they wish, and they are free to accept or reject any delivery request.
When a customer requests a delivery from Postmates, the platform identifies the closest available couriers, sending basic information about the delivery request. Once a courier accepts, Postmates then provides detailed information about the delivery to the courier and, if necessary, loads funds to the PEX card for any required purchases. Postmates then sends the customer a photograph of and contact information for the courier, as well as an estimated time and cost of the delivery, which are set by Postmates. A courier is prohibited from using a substitute for the delivery. The courier logs into the platform when the delivery is picked up and again when it is delivered so that the delivery can be tracked by the customer and Postmates. Payment is made to Postmates for the delivery and, despite whether such payment is ultimately collected, Postmates directly deposits into the courier's bank account the nonnegotiable 80% of the charged fee within four to seven days of the delivery. Postmates also typically retains liability for incorrect or damaged deliveries. Postmates handles customer complaints and monitors customer feedback, as well as the couriers' acceptance and rejection of deliveries, and can block couriers from logging onto the platform for various reasons, including fraudulent activity or negative customer reviews. Postmates acknowledged that the business would not operate without the couriers.
Although the record contains factors that could support a contrary conclusion, including that couriers are not required to wear any uniform, can work for competitors and determine the route for delivery, substantial evidence supports the Unemployment Insurance Appeal Board's [*4]finding that sufficient supervision, direction and control was exercised by Postmates to establish an employment relationship (see Matter of Watson [Partsfleet Inc.-Commissioner of Labor], 127 AD3d 1461, 1462 [2015]; Matter of Caballero [Reynolds Transp.-Hudacs], 184 AD2d 984, 984-985 [1992]; Matter of CDK Delivery Serv. [Hartnett], 151 AD2d 932, 933 [1989]; Matter of Alfisi [BND Messenger Serv.-Hartnett], 149 AD2d 883, 884 [1989]; cf. Matter of TMR Sec. Consultants, Inc. [Commissioner of Labor], 145 AD3d 1402, 1403 [2016]; Matter of Jennings [American Delivery Solution, Inc.-Commissioner of Labor], 125 AD3d 1152, 1153 [2015]). Our recent decision in Matter of Courto (SCA Enterprises-Commissioner of Labor) (159 AD3d 1240 [2018]) does not, as Postmates contends, compel a different outcome. All of these cases are fact specific and there are several key factual distinctions between this case and Courto that substantiate the Board's finding of an employment relationship here, but not in Courto. In Courto, the purported employer engaged in the business of connecting appraisers with insurance carriers to assess automobile damage claims through a computerized operations system, known as a dashboard. Payment was made at a negotiated rate and, once an assignment was accepted, no control was exercised over the results or means used to produce an appraisal. No training was provided to the appraisers, who set their own schedules. Any concerns voiced by the insurance companies were simply passed along to the appraisers. This structure is factually distinct from that of Postmates, which, among other things, sets the fees, provides financing for the transaction through the PEX cards, as necessary, handles customer complaints, bears liability for defective deliveries and actually tracks the delivery. As such, we would affirm the Board's decision, as it is supported by substantial evidence.
Clark, J., concurs.
ORDERED that the decision is reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1:A resettled decision was filed by the Board on October 11, 2016.