Matter of Walsh (Taskrabbit Inc.--Commissioner of Labor) (2019 NY Slip Op 00649)





Matter of Walsh (Taskrabbit Inc.--Commissioner of Labor)


2019 NY Slip Op 00649


Decided on January 31, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 31, 2019

526270

[*1]In the Matter of the Claim of SIMONE WALSH, Respondent.
and
TASKRABBIT INC., Appellant. COMMISSIONER OF LABOR, Respondent.

Calendar Date: January 10, 2019

Before: Garry, P.J., Egan Jr., Aarons, Rumsey and Pritzker, JJ.


Gibbons PC, New York City (Elizabeth Cowit of counsel), for appellant.
Amanda FiggsGanter, Albany, for Simone Walsh, respondent.
Letitia James, Attorney General, New York City (Mary Hughes of counsel), for Commissioner of Labor, respondent.



MEMORANDUM AND ORDER
Egan Jr., J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed April 20, 2017, which ruled, among other things, that TaskRabbit Inc. was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
TaskRabbit Inc. is engaged in the business of providing an online platform for connecting clients seeking to have certain odd jobs performed with individuals, known as taskers, who possess the skills and abilities to perform those jobs. Once an individual passes a background check, sets up an account on TaskRabbit's website and creates a profile, he or she becomes a tasker and may bid on jobs posted by clients through the platform. The client selects the tasker for the posted job and communicates directly with him or her regarding the job specifications and scope of work. Once the job is completed, the tasker provides an invoice to the client via the platform and is paid through an unaffiliated third-party payment provider that deducts the tasker's compensation, as well as a 20% fee due to TaskRabbit, from the client's credit card and remits the tasker's payment directly to his or her bank account.
In 2014, claimant became a tasker for approximately two months and, after she stopped participating on the platform, she filed a claim for unemployment insurance benefits. The Department of Labor awarded her benefits and found that TaskRabbit was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated based upon the existence of an employment relationship. TaskRabbit objected and requested a hearing that resulted in decisions by an Administrative Law Judge overruling this [*2]determination. The Unemployment Insurance Appeal Board, however, disagreed and sustained the initial determination. TaskRabbit now appeals.
The sole issue is whether there was an employment relationship between TaskRabbit and claimant, as well as other similarly situated taskers who obtained jobs through use of the platform. Initially, we note that the existence of an employment relationship is a factual issue for the Board to resolve, and its decision will be upheld if supported by substantial evidence (see Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010]; Matter of Giordano [Tender Age PT Inc.-Commissioner of Labor], 161 AD3d 1398, 1399 [2018]). Significant to such determination is whether the purported "employer exercises control over the results produced or the means used to achieve the results," with the latter being more important (Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d at 437; see Matter of Eidelson [Mulberry Tree Ctr. LLC-Commissioner of Labor], 164 AD3d 981, 982 [2018]; Matter of Cowan [Bimbo Foods Bakeries Distr. Inc.-Commissioner of Labor], 159 AD3d 1312, 1313 [2018], appeal dismissed 32 NY3d
1053 [2018]). Notably, incidental control is insufficient to establish an employment relationship (see Matter of Crystal [Medical Delivery Servs.-Commissioner of Labor], 150 AD3d 1595, 1596 [2017]; Matter of Desravines [Logic Corp.-Commissioner of Labor], 146 AD3d 1205, 1206 [2017]).
By virtue of the nature of the platform, TaskRabbit exercised absolutely no control over the manner in which the taskers completed the jobs that they obtained from clients. Indeed, the taskers bidded on the jobs posted on the platform and were awarded jobs either by a client selecting the most competitive bid or by being the first tasker to submit a bid on a particular job. All communications regarding the job were between the client and the tasker. Although TaskRabbit required taskers to submit to an identification verification process and criminal background check, complete an online questionnaire and take a quiz on use of the platform, it did not review their qualifications, provide them with training or evaluate their work performance. TaskRabbit provided customer service support to both clients and taskers, but it was directed at helping them use the platform. Similarly, the guidelines that it provided to taskers were designed to assist them in effectively using the platform, and no penalties were imposed for noncompliance. Both taskers and clients were rated based upon the feedback that they received without any input from TaskRabbit. TaskRabbit, however, did require taskers and clients to comply with its terms of use and retained the authority to curtail a tasker's access to the platform for safety and/or security reasons. Nevertheless, it used a third-party payment provider to facilitate payments between clients and taskers, did not provide taskers with any equipment, supplies or uniforms, and did not reimburse them for expenses. Furthermore, taskers were free to cancel jobs and to provide their services on other platforms.
In view of the foregoing, it is clear that the only control exercised by TaskRabbit was over the platform that taskers used to get jobs, not over any aspects of the jobs themselves. The situation here is analogous to that recently presented in Matter of Vega (Postmates Inc.-Commissioner of Labor) (162 AD3d 1337 [2018]), which involved the provider of a web-based platform designed to facilitate delivery services between customers and couriers. In reversing the Board, this Court held that there was not sufficient indicia of control by the provider over the services of the couriers to establish the existence of an employment relationship. We reach the same conclusion here and find, on the record before us, that substantial evidence does not support the Board's decisions (see Matter of Yoga Vida NYC, Inc. [Commissioner of Labor], 28 NY3d 1013, 1015 [2016]; Matter of Courto [SCA Enters. Inc.-Commissioner of Labor], 159 AD3d 1240, 1241-1242 [2018]). Therefore, they must be reversed.
Garry, P.J., Aarons, Rumsey and Pritzker, JJ., concur.
ORDERED that the decisions are reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.