Matter of Escoffery (Park W. Exec. Servs. Inc.--Commissioner of Labor) (2020 NY Slip Op 01422)





Matter of Escoffery (Park W. Exec. Servs. Inc.--Commissioner of Labor)


2020 NY Slip Op 01422


Decided on February 27, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 27, 2020

528631

[*1]In the Matter of the Claim of Jonathan Escoffery, Claimant. Park West Executive Services Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date: January 10, 2020

Before: Garry, P.J., Mulvey, Devine, Pritzker and Colangelo, JJ.


Proskauer Rose LLP, New York City (Allan S. Bloom of counsel), for appellant.
Letitia James, Attorney General, New York City (Mary Hughes of counsel), for respondent.



Garry, P.J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed May 11, 2018, which ruled, among other things, that Park West Executive Services Inc. was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Park West Executive Services Inc. provided luxury limousine services to corporate clients in the New York City area. It contracted with drivers who use their own vehicles, most of which are luxury sedans, to transport passengers. The corporate client requested Park West's services through its website or mobile application, or by phone, email or fax, and, in turn, this information was entered into an automated system and provided details on the pick-up location. The automated system was then used to dispatch drivers to where its clients' passengers needed a ride. The automated system dispatched drivers by geographic location; therefore, drivers looking to work would physically travel to that geographic location, log into the mobile application on a mobile phone or iPad and wait to be dispatched. The automated system chronologically tracked drivers waiting to be dispatched, and automatically dispatched a driver to a location when his or her name reached the top of the list.
Claimant entered into a contract to become a driver for Park West and worked in that capacity for approximately one year. He then filed a claim for unemployment insurance benefits, which prompted the Department of Labor to conduct an inquiry into claimant's employment status. The Department issued an initial determination finding that claimant was an employee and that Park West was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated. Park West requested a hearing. The Administrative Law Judge sustained the determination and found that claimant was entitled to receive benefits. The Unemployment Insurance Appeal Board affirmed. Park West appeals.
"[T]he existence of an employment relationship is a factual issue for the Board to decide and its decision will not disturbed if supported by substantial evidence" (Matter of June-Il Kim [Suk Inc.-Commissioner of Labor], 127 AD3d 1487, 1487 [2015] [internal quotation marks and citations omitted], lv denied 26 NY3d 901 [2015]; see Matter of Magdylan [Munschauer-Commissioner of Labor], 172 AD3d 1832, 1833 [2019]). Although no single factor is determinative, the relevant inquiry is whether the purported employer exercised control over the results produced or the means used to achieve those results, with control over the latter being the more important factor (see Matter of June-Il Kim [Suk Inc.-Commissioner of Labor], 127 AD3d at 1487-1488; see also Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010]). Incidental control over the results produced without further evidence of control over the means will not constitute substantial evidence of an employer-employee relationship (see Matter of Hertz Corp. [Commissioner of Labor], 2 NY3d 733, 735 [2018]; Matter of Walsh [TaskRabbit Inc.-Commissioner of Labor], 168 AD3d 1323, 1324 [2019]), and "[w]here some indicia of control is necessitated by regulatory and legal requirements, such indicia will not, standing alone, be sufficient to establish an employment relationship" (Matter of Crystal [Medical Delivery Servs.-Commissioner of Labor], 150 AD3d 1595, 1596 [2017]; see Matter of Bogart [LaValle Transp., Inc.-Commissioner of Labor], 140 AD3d 1217, 1218-1219 [2016]).
Evidence was presented at the hearing that, once hired, drivers entered into "Independent Owner Operator Agreements" (hereinafter IOO agreements) with Park West. IOO agreements required drivers to be properly licensed with the New York City Taxi and Limousine Commission. Moreover, drivers were responsible for the maintenance fees, gas and other expenses of their vehicles, and were required to name Park West as an additional insured on the drivers' vehicle insurance policies. A separate agreement — which is negotiated by Park West, its corporate clients, the union and a committee of elected drivers, both of which represent the drivers (hereinafter the committee agreement) — set the fares that drivers could charge, and provided that drivers would be reimbursed by the clients for related expenses, such as parking fees and tolls. Additionally, the committee agreement allowed Park West to conduct safety reviews of the vehicles.
The drivers exercised significant control relative to their working hours. A driver apparently had full flexibility in deciding how much and how often to work; drivers would log on to the mobile application at the time and in the geographic zone in which they wanted to work, without an apparent requirement or expectation as to frequency or duration in any given period. The dispatch system would match the driver with work once the driver decided when and where to work (compare Matter of Spectacular Limo Link, Inc. [Commissioner of Labor], 21 AD3d 1172, 1173 [2005]). The drivers determined the routes they wanted to take in transporting the passengers. Drivers had the freedom to utilize substitutes and to work for competitors while working for Park West, and they risked nonpayment of both fares and reimbursement of expenses in the event that the corporate client did not remit payment (compare Matter of Odyssey Transp., LLC [Commissioner of Labor], 62 AD3d 1175, 1175-1176 [2009]). A witness for Park West testified that it encouraged drivers to attend informational sessions to learn how the dispatch system and application operated, as well as to dress and act professionally, so that drivers could maximize their own profits and have success in their entrepreneurial activity, but there was no set dress code (compare Matter of Khan [Mirage Limousine Serv., Inc.-Commissioner of Labor], 66 AD3d 1098, 1100 [2009], lv denied 13 NY3d 717 [2010]). Although Park West offered window signs to the drivers so that passengers could identify their rides, their use was not required.
In view of the foregoing, it is evident that the day-to- day activities of the drivers, including when and where they worked, were controlled by the decisions the drivers made themselves. The drivers had ultimate control over their vehicles and were solely responsible for maintenance and other related expenses in the ownership of their respective vehicles (compare Matter of Eliraky [Crosslands Transp., Inc.-Commissioner of Labor], 21 AD3d 1197, 1198 [2005]). The requirements that Park West imposed with respect to licensing, registration and safety were necessitated by laws governing the industry and the rules of the New York City Taxi and Limousine Commission (see Matter of Yoga Vida NYC, Inc. [Commissioner of Labor], 28 NY3d 1013, 1016 [2016]; compare Matter of Jung Yen Tsai [XYZ Two Way Radio Serv., Inc.-Commissioner of Labor], 166 AD3d 1252, 1255 [2018]). Although Park West acted as a liaison between drivers and clients when complaints arose, managing complaints from clients is not conclusive as to the type of employment relationship, as the "requirement that the work be done properly is a condition just as readily required of an independent contractor as of an employee" (Matter of Yoga Vida NYC, Inc. [Commissioner of Labor], 28 NY3d at 1016). As such, we find that Park West's control over the drivers was, at most, incidental (see id.; Matter of Bogart [Lavalle Transp. Inc.-Commissioner of Labor], 140 AD3d at 1220). Accordingly, as the record does not indicate that Park West exercised a sufficient indicia of control over the drivers to establish the existence of an employment relationship, substantial evidence does not support the Board's decisions and they must be reversed (see Matter of Vega [Postmates Inc.-Commissioner of Labor], 162 AD3d 1337, 1339 [2018]; compare Matter of Aleksanian [Corp. Trans. Group, LTD.-Commissioner of Labor], ___ AD3d ___ [decided herewith]).
Mulvey, Devine, Pritzker and Colangelo, JJ., concur.
ORDERED that the decisions are reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.