Matter of Thorndike (Penn Mut. Life Ins. Co.--Commissioner of Labor) (2020 NY Slip Op 03964)





Matter of Thorndike (Penn Mut. Life Ins. Co.--Commissioner of Labor)


2020 NY Slip Op 03964


Decided on July 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 16, 2020

528760

[*1]In the Matter of the Claim of Thomas P. Thorndike, Respondent. Penn Mutual Life Insurance Company, Appellant. Commissioner of Labor, Respondent.

Calendar Date: June 10, 2020

Before: Garry, P.J., Clark, Mulvey, Aarons and Colangelo, JJ.


Morgan, Lewis & Bockius LLC, New York City (Melissa Rodriguez of counsel), for appellant.
David Abrams, New York City, for Thomas P. Thorndike, respondent.
Letitia James, Attorney General, New York City (Dawn A. Foshee of counsel), for Commissioner of Labor, respondent.



Clark, J.
Appeal from a decision of the Unemployment Insurance Appeal Board, filed January 18, 2018, which ruled, among other things, that Penn Mutual Life Insurance Company was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Claimant, a financial advisor, entered into a written agreement — denominated as a full-time soliciting agent's contract — with Penn Mutual Life Insurance Company in August 2012 to sell various insurance products to interested clients. In mid-December 2013, claimant was advised that this contract would not be renewed due to poor sales performance; although claimant thereafter signed a separate agreement, described as an independent agent's contract, he did not perform any services for Penn Mutual after December 31, 2013. Claimant subsequently applied for unemployment insurance benefits, which the Department of Labor granted. Following a lengthy hearing, the Unemployment Insurance Appeal Board upheld the determination, finding the existence of an employment relationship between claimant and Penn Mutual and ruling that Penn Mutual was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated. This appeal by Penn Mutual ensued.
We affirm. "Whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the Board, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Sischo [Safeguard Props. LLC-Commissioner of Labor], 180 AD3d 1112, 1112-1113 [2020] [internal quotation marks, ellipsis, brackets and citations omitted]; see Matter of Giampa [Quad Capital, LLC-Commissioner of Labor], 181 AD3d 1129, 1129 [2020]; Matter of Bloomfield [IME Watchdog, Inc.-Commissioner of Labor], 175 AD3d 1650, 1651 [2019]). "A determination that an employer-employee relationship exists may rest upon evidence that the employer exercise[d] either control over the results produced or over the means used to achieve the results, and control over the means is the more important factor to be considered" (Matter of Aleksanian [Corporate Transp. Group, Ltd.-Commissioner of Labor], 180 AD3d 1307, 1308 [2020] [internal quotation marks, brackets, ellipsis and citations omitted]; see Matter of Walsh [TaskRabbit Inc.-Commissioner of Labor], 168 AD3d 1323, 1324 [2019]).
Claimant testified that he filled out an application with Penn Mutual, participated in an interview at which his commission rate and initial stipend were discussed, underwent a background check and thereafter signed a full-time soliciting agent's contract (see Matter of Giampa [Quad Capital, LLC-Commissioner of Labor], 181 AD3d at 1129-1130). Although claimant had to pay a monthly telephone fee, as well as any postage or photocopying costs that he incurred, he was provided a cubicle at Penn Mutual's office, the use of the company's receptionist and the ability to book a conference room, all at no charge to him. Claimant was given an in-house email address as well as letterhead and business cards bearing the agency's name and address. Additionally, claimant was afforded the opportunity to qualify for health/dental insurance (see e.g. Matter of Kaiser [Woodmen of World Life Ins. Socy.-Ross], 53 NY2d 949, 951 [1981]) and to participate in a matching 401(k) program; claimant also initially was covered under Penn Mutual's errors and omissions policy. Claimant acknowledged that he was able to set his own schedule and to sell insurance products other than those offered by Penn Mutual; however, he also testified that he was required to meet with his managing director almost weekly, and that the managing director, in turn, scheduled training workshops that claimant was strongly encouraged to attend, reviewed and, if necessary, corrected the client applications submitted by claimant, directed claimant to develop a business plan and helped him do so, provided feedback on claimant's performance, as set forth in the sales quarterly reports generated by Penn Mutual, and warned him that his contract might not be renewed if his performance was not satisfactory (compare Matter of Sirotkin Travel [Ross], 63 AD2d 1095, 1095 [1978] [no evidence that the claimant was
supervised]).
Claimant's testimony was largely uncontradicted by any evidence from Penn Mutual. Penn Mutual did not offer testimony from the managing director or any other company representative with direct knowledge regarding the level of supervision that claimant described. A representative who testified on behalf of Penn Mutual acknowledged that the client applications submitted by claimant were subject to further review before being transmitted for underwriting and that claimant was issued W-2s for 2012 and 2013. Although that same individual denied that claimant was subject to a performance evaluation, he also testified that claimant ran the risk of either a reprimand or the loss of his contract if claimant did not conduct himself in an appropriate manner with respect to his clients. Finally, it is undisputed that, based upon claimant's sales history, Penn Mutual did not offer claimant the opportunity to renew his full-time soliciting agent's contract; rather, Penn Mutual presented (and claimant signed) an independent contractor's agreement — the latter of which did not afford claimant the opportunity to qualify for either health/dental insurance or to participate in Penn Mutual's 401(k) plan.
In light of the foregoing, the Board's finding that an employment relationship existed between claimant and Penn Mutual is supported by substantial evidence in the record as a whole — "notwithstanding other evidence in the record that could support a contrary conclusion" (Matter of Giampa [Quad Capital, LLC-Commissioner of Labor], 181 AD3d at 1130; see Matter of Vega [Postmates Inc.-Commissioner of Labor], ___ NY3d ___, ___, 2020 NY Slip Op 02094, *2-3 [2020]; compare Matter of 12 Cornelia St. [Ross], 56 NY2d 895, 897-898 [1982]; Matter of Watz [Equit. Life Assur. Socy. of U.S.-Ross], 46 NY2d 876, 877 [1979]).[FN1] Given the particular facts presented here regarding Penn Mutual's supervision and control over claimant's work, we reject its contention that certain guidelines adopted by the Department of Labor "mandate a different result" (Matter of Alemic [Herald Publ. Co.-Commissioner of Labor], 140 AD3d 1565, 1566 [2016]; accord Matter of Fecca [Herald Publ. Co.-Commissioner of Labor], 171 AD3d 1423, 1426 [2019]). We note that the guidelines expressly provide that they are based on common-law standards for determining whether employer-employee relationships exist, and that they "emphasize that an individual is considered an independent contractor 'only when free from control and direction in the performance of services'" (Matter of Armison [Gannett Co., Inc.-Commissioner of Labor], 122 AD3d 1101, 1103 [2014], lv dismissed 24 NY3d 1209 [2015]; see Matter of Soo Tsui [Language Servs. Assoc., Inc.-Commissioner of Labor], 135 AD3d 1098, 1100 [2016]; compare Matter of Wannen [Andrew Garrett Inc.-Commissioner of Labor], 57 AD3d 1029, 1030-1031 [2008]).
We further reject Penn Mutual's contention that the Board's determination was improperly based upon indicia of control that were required by statutes, regulations and rules. As Penn Mutual argues, "such indicia will not, standing alone, be sufficient to establish an employment relationship" (Matter of Escoffery [Park W. Exec. Servs. Inc.-Commissioner of Labor], 180 AD3d 1294, 1296 [2020] [internal quotation marks and citations omitted]). However, the record reveals that many of the indicia of control upon which Penn Mutual bases this argument are not, in fact, obligatory. For example, Penn Mutual argues that it was required to provide claimant with fringe benefits, a W-2 tax form and a cubicle because of his status as a "statutory employee" under the Internal Revenue Code, which permits certain independent contractors to qualify for such benefits for federal tax purposes (see 26 USC § 3121 [d] [3] [B]). However, Penn Mutual's representative testified that its provision of such benefits to qualifying insurance agents was "discretionary," not mandatory, and that Penn Mutual had chosen to do so "in order to be competitive with the market." Likewise, with regard to claimant's supervision by the managing director, Penn Mutual argues that it was required by certain rules to provide supervision designed to achieve compliance with securities laws and regulations. However, as previously discussed, claimant's testimony established that his managing director's supervision was primarily related to his job performance, rather than such compliance. We thus find that, even if some of Penn Mutual's control over claimant's performance "was occasioned by the highly regulated nature of the [insurance industry], many other aspects of the control that [Penn Mutual] exercised were not" (Matter of Crystal [Medical Delivery Servs.-Commissioner of Labor], 150 AD3d 1595, 1597 [2017]; compare Matter of Bogart [LaValle Transp., Inc.-Commissioner of Labor], 140 AD3d 1217, 1219-1220 [2016]). Penn Mutual's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Garry, P.J., Mulvey, Aarons and Colangelo, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: The Administrative Law Judge who conducted the hearing credited claimant's testimony regarding his dealings with the managing director. The Administrative Law Judge acknowledged that there were some indicia that the financial advisers were independent contractors in this case. However, in a thoughtful and well-reasoned decision, she found that the managing director "exercised a sufficient amount of direction, supervision and control over . . . claimant."