Matter of Doster (Fundamental Labor Strategies--Commissioner of Labor) (2020 NY Slip Op 05262)





Matter of Doster (Fundamental Labor Strategies--Commissioner of Labor)


2020 NY Slip Op 05262


Decided on October 1, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 1, 2020

529240

[*1]In the Matter of the Claim of Timothy Doster, Respondent. Fundamental Labor Strategies, Appellant. Commissioner of Labor, Respondent.

Calendar Date: September 11, 2020

Before: Lynch, J.P., Clark, Devine, Pritzker and Reynolds Fitzgerald, JJ.


Segal McCambridge Singer & Mahoney, New York City (Theodore M. Eder of counsel), for appellant.
Letitia James, Attorney General, New York City (Mary Hughes of counsel), for Commissioner of Labor, respondent.



Lynch, J.P.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed May 2, 2019, which ruled, among other things, that Fundamental Labor Strategies was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Claimant, a truck driver, filed a claim for unemployment insurance benefits and listed Fundamental Labor Strategies (hereinafter FLS) as his employer. The Department of Labor allowed the claim, finding that claimant was an employee of FLS under both the common-law test for an employer-employee relationship and under the terms of the New York State Commercial Goods Transportation Industry Fair Play Act (Labor Law art 25-C [eff. Apr. 10, 2014]). FLS requested a hearing, contending that claimant was an independent contractor. At the conclusion of that hearing, an Administrative Law Judge (hereinafter ALJ) upheld the initial determination, agreeing that there was sufficient indicia of supervision and control to establish an employment relationship at common law and, further, that FLS had failed to overcome the statutory presumption of employment set forth in Labor Law § 862-b (1). The Unemployment Insurance Appeal Board affirmed the ALJ's determinations in separate decisions — finding FLS liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated effective the second quarter of 2014 — and FLS appeals.
We affirm. Pursuant to the terms of Labor Law § 511 (1) (b) (1-c), the term "employment" includes "any service . . . as an employee in the commercial goods transportation industry unless the presumption of employment can be overcome" under Labor Law § 862-b (1). To that end, Labor Law § 862-b (1) provides, in relevant part, that "[a]ny person performing commercial goods transportation services for a commercial goods transportation contractor shall be classified as an employee of the commercial goods transportation contractor unless" such person is either a separate business entity as defined by Labor Law § 862-b (2) or an independent contractor within the meaning of Labor Law § 862-b (1) (a)-(c). The statutory scheme further defines "commercial goods transportation services" as "the transportation of goods for compensation by a driver who possesses a state-issued driver's license, transports goods in
. . . New York, and operates a commercial motor vehicle" (Labor Law § 862-a [3]), and a "commercial goods transportation contractor" includes any legal entity that compensates a driver for performing such services (Labor Law § 862-a [1]).
The parties do not dispute that claimant provided commercial goods transportation services within the meaning of the statute; he possessed a state-issued commercial driver's license, and he transported goods in New York for compensation utilizing a commercial motor vehicle. Similarly, despite FLS's characterization of itself as a transportation consulting firm or broker, there is no question that it paid claimant on a weekly basis for the driving services that claimant furnished to FLS's clients — regardless of whether the client paid FLS for such services. As such, FLS falls squarely within the definition of a commercial goods transportation contractor as set forth in Labor Law § 862-a (1). Hence, the statutory presumption of employment applies in the first instance (see Labor Law § 862-b [1]).
To overcome the statutory presumption, FLS needed to establish that claimant was "free from control and direction in performing [his] job," both under the terms of his letter agreement with FLS and "in fact" (Labor Law § 862-b [1] [a]), that the services rendered by claimant were "performed outside [FLS's] usual course of business" (Labor Law § 862-b [1] [b]) and that claimant was "customarily engaged in an independently established trade, occupation, profession, or business that is similar to the service" he performed for FLS (Labor Law § 862-b [1] [c]). All three criteria — commonly referred to as the ABC test — had to be met in order for claimant to be classified as an independent contractor (see Labor Law § 862-b [1]). In reviewing the Board's decision, we are mindful that "it is not the role of this Court to second-guess determinations rendered by administrative agencies or, more to the point, independently review and weigh the evidence adduced at an administrative hearing" (Matter of Barrier Window Sys., Inc. [Commissioner of Labor], 149 AD3d 1373, 1377 [2017] [internal quotation marks, brackets and citation omitted]). Accordingly, if the Board's decision is supported by substantial evidence, it must be affirmed — even if other evidence in the record could support a contrary conclusion (see id. at 1375; see also Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 137 [2020]).
With respect to the direction and control element, FLS makes much of the fact that it neither provided claimant with any training or fringe benefits, required claimant to attend meetings or undergo performance evaluations nor directed the particular manner in which claimant rendered his driving services, i.e., route selection and the like. FLS also correctly notes that claimant was free to reject assignments offered to him by FLS and was not prohibited from soliciting or accepting work from other commercial goods transportation contractors. The record also reflects, however, that FLS required claimant to complete an application, participate in a telephone interview and undergo a background check prior to entering into an agreement with FLS (see Matter of Gill [Strategic Delivery Solutions LLC-Commissioner of Labor], 134 AD3d 1362, 1363 [2015]). FLS also was responsible for ensuring that claimant was in compliance with all applicable regulations and had the authority to conduct drug testing. Additionally, FLS established a flat rate of pay for claimant (see Matter of Crystal [Medical Delivery Servs.-Commissioner of Labor], 150 AD3d 1595, 1597 [2017]) and, upon claimant's submission of certain industry-required time sheets, FLS paid claimant on a weekly basis — regardless of whether FLS received payment from the client (see Matter of Gill [Strategic Delivery Solutions LLC-Commissioner of Labor], 134 AD3d at 1364). Although FLS did not dictate the particulars of the assignments, such as route selection or how often claimant was required to check in with the client, it did provide claimant with the date, time and location of each assignment, as well as contact information and any other details that might be available. FLS also was responsible for monitoring and maintaining claimant's driver qualification file and would attempt to intervene and resolve any client complaints lodged against a driver. As summarized by FLS's president, although FLS was not a motor carrier, it did "all of the things that . . . motor carrier[s] would otherwise have to do if they were hiring [the drivers] themselves." Under these circumstances, substantial evidence supports the Board's finding that FLS failed to establish that claimant was free from direction and control in performing his job.
We reach a similar conclusion regarding the remaining two prongs of the ABC test. Although FLS argues that it merely matched qualified drivers with interested clients, the record supports the Board's finding that "FLS's usual course of business [was] to provide drivers to perform driving services for motor carriers, precisely the services that . . . claimant performed for the motor carriers as assigned by FLS." The fact that FLS is not a motor carrier itself is of no moment, as it is the nature of the services provided — rather than the lack of its own trucking fleet — that is determinative. Similarly, FLS failed to establish that claimant was "customarily engaged in an independently established trade, occupation, profession, or business that it similar to the service" provided by FLS (Labor Law § 862-b [1] [c]). As FLS failed to satisfy all three prongs of the ABC test, the statutory presumption was not rebutted and, therefore, the Board's decision must be affirmed.
That said, FLS is correct in noting that the statutory presumption did not take effect until April 10, 2014 (see L 2013, ch 558, § 1) and, therefore, Labor Law § 862-b (1) does not apply to the first nine days of the second quarter of 2014. Hence, FLS is properly chargeable with those nine days only if claimant meets the definition of an employee under the traditional common-law test. As we are satisfied that the foregoing indicia of supervision and control were sufficient to support the existence of a common-law employment relationship, the Board properly found FLS liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated effective April 1, 2014. FLS's remaining contentions have been examined and found to be lacking in merit.
Clark, Devine, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decisions are affirmed, without costs.