Matter of Joseph Fisheries Corp. (Commissioner of Labor) (2022 NY Slip Op 00920)





Matter of Joseph Fisheries Corp. (Commissioner of Labor)


2022 NY Slip Op 00920


Decided on February 10, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 10, 2022

532585
[*1]In the Matter of Joseph Fisheries Corp., Appellant. Commissioner of Labor, Respondent.

Calendar Date:January 14, 2022

Before:Garry, P.J., Clark, Aarons and Reynolds Fitzgerald, JJ.

Law Office of Neil R. Finkston, Great Neck (Neil R. Finkston of counsel), for appellant.
Letitia James, Attorney General, New York City (Marjorie S. Leff of counsel), for respondent.



Aarons, J.
Appeal from a decision of the Unemployment Insurance Appeal Board, filed September 23, 2020, which assessed Joseph Fisheries Corp. additional unemployment insurance contributions based on remuneration paid to certain persons.
Joseph Fisheries Corp. (hereinafter JFC) is a commercial fishing enterprise that owns two federally-permitted fishing vessels. To operate its business and the fishing vessels, JFC, through word of mouth, recruits and retains the services of boat captains who, in turn, recruit crew members within the fishing community. Prior to providing any of their services, the boat captains and crew members entered into written agreements with JFC, as is required by federal law.[FN1] As a result of an audit for the period January 1, 2014 to December 31, 2016, the Department of Labor issued a determination that assessed JFC additional unemployment insurance contributions based upon remuneration paid to its captains and crew members included in the audit. A hearing ensued, and the Unemployment Insurance Appeal Board ultimately sustained the Department's determination assessing additional unemployment insurance contributions, finding, in relevant part, that JFC exercised or reserved the right to exercise sufficient supervision, direction or control over the services performed by the captains and crew members to establish an employment relationship for purposes of additional unemployment insurance contributions.[FN2] JFC appeals.
We affirm. "Whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the Board, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Thomas [US Pack Logistics, LLC-Commissioner of Labor], 189 AD3d 1858, 1859 [2020] [internal quotation marks and citations omitted]; see Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 136 [2020]). "Substantial evidence is a minimal standard requiring less than a preponderance of the evidence. As such, if the evidence reasonably supports the Board's choice, we may not interpose our judgment to reach a contrary conclusion" (Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d at 136-137 [internal quotation marks, brackets and citations omitted]). "Traditionally, the Board considers a number of factors in determining whether a worker is an employee or an independent contractor, examining all aspects of the arrangement. But the touchstone of the analysis is whether the employer exercised control over the results produced by the worker or the means used to achieve the results. The doctrine is necessarily flexible because no enumerated list of factors can apply to every situation faced by a worker, and the relevant indicia of control will necessarily vary depending on the nature of the work" (id. [*2]at 137 [internal quotation marks, brackets, footnote and citations omitted]; see Matter of Mayo [Epstein-Commissioner of Labor], 193 AD3d 1199, 1200 [2021]; Matter of Jordan [Alterna Holdings Corp.-Commissioner of Labor], 187 AD3d 1264, 1265 [2020]).
The record establishes that some indicia of control by JFC was mandated by federal law — such as requiring that an agreement must be made between JFC and the captains and crew members, providing for the recovery of wages and requiring the captains and crew members to notify JFC of any illness, disability or injury (see 46 USC §§ 10601, 10602, 10603) — which, alone, is not sufficient to establish an employer-employee relationship. Nevertheless, such indicia of control can still be considered as part of the overall determination of control exercised over the captains and crew members (see Matter of Cohen [Just Energy Mktg. Corp.-Commissioner of Labor], 117 AD3d 1112, 1112-1113 [2014], lv dismissed 24 NY3d 928 [2014]). As the Board found, certain indicia of control that JFC exercised over the captains and crew members went beyond what was required by federal law. For example, prior to retaining a captain's services, JFC would screen potential captains by contacting their references. JFC owned and provided the fishing vessels, as well as all of the necessary equipment required for the fishing voyages, and JFC also retained responsibility for the maintenance of the vessels. Upon completion of a voyage and unloading of the fish that was caught, the crew members were directed to prepare the vessel for the next voyage. Significantly, as the captains and crew members did not carry their own workers' compensation insurance, JFC maintained full responsibility for obtaining and carrying property and casualty liability insurance. JFC maintained a vessel monitoring system and, during a voyage, checked the status and location of the vessel each day. JFC arranged for the sale of the fish to market brokers and, upon collecting/receiving the fishing proceeds from the market brokers, would directly pay the captains and crew members according to a payment structure and percentages that it determined and specified in the written agreements. Moreover, JFC, in its discretion, could reduce a crew member's payment share if JFC learned that the crew member's ability and/or contribution to the voyage was more limited than his or her crew member peers.
Further, under the written agreements, JFC could terminate the services of a captain or crew member with or without cause, and captains and crew members could be required to perform additional duties as directed and could not, among other things, bring passengers on board the vessels without JFC's approval. Although some of the control exercised by JFC was occasioned by the regulated nature of the fishing industry, we find that, in view of the foregoing, substantial evidence supports the Board's determination that an employment relationship existed, notwithstanding evidence [*3]in the record that could support a contrary conclusion (see Matter of Stecher Auction Servs., Inc. [Commissioner of Labor], 131 AD3d 1289, 1290 [2015]; Matter of Spectacular Limo Link, Inc. [Commissioner of Labor], 21 AD3d 1172, 1173 [2005]; compare Matter of Escoffery [Park W. Exec. Servs. Inc.-Commissioner of Labor], 180 AD3d 1294, 1296-1297 [2020]; Matter of Bogart [LaValle Transp., Inc.-Commissioner of Labor], 140 AD3d 1217, 1219-1220 [2016]). To the extent that we have not addressed JFC's remaining contentions, they are either academic in light of our decision or have been considered and found to be without merit.
Garry, P.J., Clark and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: Federal law requires that the owner of a fishing vessel, which meets certain tonnage, "make a fishing agreement in writing with each seaman [or seawoman] employed on board" and the agreement shall "(1) state the period of effectiveness of the agreement; (2) include the terms of any wage, share, or other compensation arrangement peculiar to the fishery in which the vessel will be engaged during the period of the agreement; and (3) include other agreed terms" (46 USC § 10601 [a], [b] [1]-[3]).

Footnote 2: The Board excluded one of the individuals contained in the audit because she was not a captain or crew member.